YOUNG *v.* RICE.

SALES—CONTRACTS—ABANDONMENT—ACQUIESCENCE—RESCISSION.
   Where an offer to purchase a millinery business was accepted in writing and the purchasers placed in possession, but later they abandoned possession and refused to execute the necessary papers, the seller, by resuming posses-

Necessity of mutual consent to rescind contract without liability for nonperformance, see note in 30 L. R. A. 40.

sion of the business, treating it as her own, and retaining the proceeds of the sales during the time the purchasers had possession, which had been left in the store, assented to the abandonment and thereby effected a rescission of the contract of sale.[1]

Error to Kent; Dunham (Major L.), J.    Submitted April 13, 1926.    (Docket No. 70.)    Decided June 7, 1926.

Assumpsit by Elizabeth Young against Carl Rice and another for breach of a contract of sale.    Judgment for defendants on a directed verdict.    Plaintiff brings error.    Affirmed.

*Rodgers & Rodgers,* for appellant.

*Linsey, Shivel & Smedley,* for appellees.

SHARPE, J.    In May, 1925, plaintiff was desirous of selling a millinery business which she owned and had conducted for six years in the city of Grand Rapids.    Defendants desired to purchase such a business, and had enlisted the service of Berton T. Fuller, a real estate broker, to that end.    Fuller learned that plaintiff wished to sell, so informed Mrs. Rice, and after some negotiations, a deal was made on June 20, 1925, whereby defendants offered in writing to purchase plaintiff's millinery business for $4,750; $250 on delivery of bill of sale, and balance by assignment of defendants' equity in a house and lot in the city.    This offer was accepted by plaintiff in writing. On June 23d. Mrs. Rice was given possession of the millinery store, opened a bank account, and had the insurance policy assigned to her.    The parties at that time called an attorney to the store and asked him to prepare the necessary papers to complete the deal. On the morning of June 27th (Saturday) Mrs. Rice

[1]Sales, 35 Cyc. p. 130.

called plaintiff on the telephone and said to her that "she was a little afraid of the proposition." After some conversation, plaintiff said to her, "Meet me at the store a little later and we will talk it over." Mrs. Rice did not come to the store. The keys were left that night by an employee at a place designated by plaintiff. They were secured by her on Monday morning, and she took charge of the store and conducted the business thereafter. The proceeds of the sales during the preceding week had been left in the store. These were taken possession of by plaintiff and deposited in the bank in her own account. It also appears that on the Sunday intervening the plaintiff caused an advertisement of the business to be inserted in a Grand Rapids newspaper announcing a "clearance sale. Hats 1/2 and 1/3 off." On Monday the plaintiff signed the bill of sale prepared by the attorney. At her request he took the papers he had prepared for defendants to sign to their home, but they refused to execute them. On July 15th, plaintiff commenced this suit to recover the damages sustained by her, due to defendants' failure to perform the contract. At the conclusion of plaintiff's proofs, defendants' counsel moved for a directed verdict for the reasons, *first,* that there had been a rescission of the contract, and, *second,* that plaintiff had failed to establish any damage sustained by her. The trial court granted the motion for the reason first stated. The plaintiff here reviews the judgment entered on the verdict directed for defendants by writ of error.

The defendants did not in terms rescind the contract; they abandoned it. What they did was, in legal effect, a redelivery of that which they had purchased to the plaintiff. Her act in taking possession and at once resuming the conduct of the business as her own and retaining the proceeds of the sales during the week defendants had possession, we think

amounted to an assent to such abandonment and thereby effected a rescission of the contract of sale and placed the parties in a position as if the contract had not been made.

It is urged that defendants were not entitled to possession under the terms of the instrument until the payment had been made and the conveyances therein provided for had been executed and delivered, and that Mrs. Rice was not in actual possession at any time. While not entitled to possession, it cannot be doubted that possession was delivered to her. Plaintiff so testified.

This subject is exhaustively treated in 2 Black on Rescission, §§ 531, 532:

"When goods have been delivered to the buyer under a contract of sale, and he returns them to the seller, and the latter accepts the redelivery, and resumes and retains possession of the property as his own, and does not notify the buyer that he intends to hold it subject to his order or sell it for his account, the transaction operates as a complete rescission of the contract of sale. And it appears to be immaterial, in respect to the application of this rule, whether the purchaser assigns any reasons for returning the goods, or what his specified reasons may be, whether a deficiency in quantity or quality, a general dissatisfaction with the property, his inability to pay, or a mere wish to be released from his bargain. For his return of the goods is an offer of rescission, and the acceptance and retention of them by the seller is an acceptance of that offer, and thereupon a rescission is effected, not necessarily for legally sufficient cause, but by the mutual consent of the parties.     *     *     *

"Without any explicit agreement for the abrogation of a contract, it may be effectually rescinded by the actions of the parties where they mutually abandon all further performance under it, and treat it as at an end, neither seeking to hold the other to any accountability under it. And the same result follows where one of the parties distinctly and completely abandons all rights and all obligations under the contract, and

the other accepts the situation so created and restores himself, so far as possible, to his former situation."

In 24 R. C. L. 272, it is said:

"A mutual rescission may be inferred from the conduct of the parties clearly evidencing their intention to treat the contract at an end."

And further, on page 276:

"The mutual rescission of an executory contract of sale puts an end to any obligation of the parties further to perform or liability for the nonperformance of the contract."

A somewhat similar question was presented in the late case of *Holmes* v. *Borowski*, 233 Mich. 407, where the rules governing mutual rescission were considered. The reasoning in the opinion in that case and the authorities discussed and cited are instructive on the question here presented.

The judgment is affirmed.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.