RIVERVIEW COOPERATIVE, INC v THE FIRST NATIONAL BANK
AND TRUST COMPANY OF MICHIGAN

Docket No. 67253. Argued April 6, 1983 (Calendar No. 9).—Decided
August 22, 1983.

Riverview Cooperative, Inc., brought an action against The First
National Bank and Trust Company of Michigan, seeking recov-
ery of certain moneys paid by the bank to ELM Associates and
its owner, Elaine DiBiasio, upon the presentation of unautho-
rized checks, signed by DiBiasio, drawn upon Riverview's ac-
count. Subsequently, a default judgment was entered against
ELM and DiBiasio in a separate action alleging conversion,
fraud, and breach of fiduciary duty. The Kalamazoo Circuit
Court, Patrick H. McCauley, J., granted First National's motion
for accelerated judgment on the ground that because of the
judgment against the converters Riverview's claim against the
bank was barred by the doctrine of election of remedies. The
Court of Appeals, T. M. Burns, P.J., and M. F. Cavanagh and
D. F. Walsh, JJ., affirmed in an unpublished opinion per curiam
(Docket No. 49402). The plaintiff appeals.

In an opinion by Justice Ryan, joined by Chief Justice Wil-
liams and Justices Kavanagh, Levin, Brickley, and Boyle, the
Supreme Court *held:*

The doctrine of election of remedies does not bar the plain-
tiff's cause of action against the bank. The remedies sought by
the plaintiff in the two actions are not inconsistent. The rela-
tionship between the plaintiff and the bank should be recog-
nized as one of debtor and creditor, and the plaintiff's cause of
action against the bank is in contract for breach of a contrac-
tual obligation. The plaintiff's cause of action against the
converters of its funds is in tort: fraud, conversion, and breach
of fiduciary duty.

1. The doctrine of election of remedies precludes a person
who chooses one of two or more inconsistent remedies from
later pursuing any of the remaining remedies. The purpose of

REFERENCES FOR POINTS IN HEADNOTES

[1] 25 Am Jur 2d, Election of Remedies § 8 *et seq.*
[2, 3] 25 Am Jur 2d, Election of Remedies §§ 12, 13.

the doctrine is to prevent double recovery for a single injury and not to prevent recourse to alternate remedies. For the doctrine to apply, there are three prerequisites: 1) two or more remedies must exist; 2) the remedies must be inconsistent; and 3) one remedy must have been chosen.

2. Where, as in this case, a bank has wrongly honored an unauthorized check and has released the funds of an innocent depositor, case law has held that the depositor's election to proceed against either the bank or the converter determines the ownership of the funds. If recovery against the converter was sought, the plaintiff was said to have affirmed the action of the bank and, impliedly, the fact that the funds were rightfully the plaintiff's and had been transferred to the converter. Thus, the plaintiff could not later seek recovery of the funds from the bank because the bank no longer was in possession of the funds. The sounder approach is to recognize that the relationship between a depositor and a bank is one of debtor and creditor. When funds are deposited in an account, they become the bank's funds, subject only to the bank's duty to repay the depositor.

3. In this case, the converters and the bank each committed separate and distinct wrongs. The plaintiff's cause of action against the converters is for fraud, conversion, and breach of fiduciary duty. The cause against the bank is for breach of a contractual obligation in debiting the plaintiff's account without authority. The remedies, while concurrent, are consistent; they do not proceed from opposite and irreconcilable claims of right. The plaintiff may logically pursue one remedy without renouncing the other.

Reversed.

*298 Mich 59; 298 NW 404 (1941)* overruled.

1. ELECTION OF REMEDIES — APPLICATION.

The doctrine of election of remedies precludes a person who chooses one of two or more inconsistent remedies from later pursuing any of the remaining remedies, so as to prevent double recovery for a single injury, and not to prevent recourse to alternate remedies; to apply, it is necessary that two or more inconsistent remedies exist and that one of the remedies has been pursued by the plaintiff.

2. ELECTION OF REMEDIES — BANKS AND BANKING — CONVERSION.

A plaintiff who was granted a default judgment against converters of funds in the plaintiff's bank account was not barred by the doctrine of election of remedies from bringing an action

against the bank for wrongfully honoring checks drawn upon the plaintiff's account presented by the converters because the remedies against the bank and the converters, although concurrent, were not inconsistent.

3. ELECTION OF REMEDIES — BANKS AND BANKING — CONVERSION — DEBTOR AND CREDITOR.

The decision by a plaintiff to bring an action against persons who converted funds deposited in the plaintiff's bank account by presenting unauthorized checks drawn upon the account was not a ratification of the actions of the bank in wrongfully honoring the checks or an implied affirmation that the converted funds were the plaintiff's property and not the bank's and that they were in the possession of the converters, precluding an action against the bank by operation of the doctrine of election of remedies; the relationship between the plaintiff as a depositor and the bank was one of debtor and creditor, the funds upon deposit having become the bank's funds, subject only to the bank's duty to repay the depositor, so that the plaintiff's action against the bank for breach of its contractual obligation was consistent with the action against the converters in tort.

*Snyder & Handler, P.C.* (by *David S. Snyder),* for the plaintiff.

*Howard & Howard, P.C.* (by *John W. Allen* and *Rita L. Repko),* for the defendant.

RYAN, J. This is an action against a bank for wrongfully honoring checks drawn upon the appellant's account by a drawer not authorized to do so.

Riverview Cooperative, Inc., is a nonprofit corporation established to provide low- and moderate-income housing in the Kalamazoo area. In 1973, its board of directors retained the services of Consumers System, Inc., hereinafter Consumers, a real-estate management firm, to oversee the day-to-day operations of Riverview. Consumers established bank accounts on Riverview's behalf with the appellee bank in October, 1973. In 1974, Consumers was succeeded in appellant's service by

ELM Associates, Inc., hereinafter ELM, which was owned and operated by Elaine DiBiasio. Although DiBiasio was a former employee of Consumers, she had never been authorized by corporate resolution or otherwise to sign checks for the withdrawal of funds from the Riverview account. Despite that fact, DiBiasio wrote and negotiated checks for the withdrawal of more than $20,000 from the Riverview account upon her sole signature and allegedly with the bank's knowledge that she was not authorized to do so.

On August 16, 1977, Riverview filed suit against ELM and DiBiasio, alleging conversion, fraud, and breach of fiduciary duty, claiming damages in the amount of $18,000. Approximately a week later, Riverview filed suit against the bank, alleging breach of contract and possibly alleging conversion in wrongfully honoring checks drawn upon the Riverview account by DiBiasio. On September 29, 1977, a default was taken against ELM and DiBiasio, and judgment was entered against them for $18,000 plus costs.

The bank then moved for accelerated judgment under GCR 1963, 116, alleging the defense of election of remedies. The trial court ruled on December 28, 1979, that Riverview's claim against appellee was barred by the doctrine of election of remedies. The Court of Appeals affirmed in an unpublished per curiam opinion, *Riverview Cooperative, Inc v First National Bank & Trust Co of Michigan,* decided April 27, 1981 (Docket No. 49402), declaring itself bound by this Court's decision in *Ielmini v Bessemer National Bank,* 298 Mich 59; 298 NW 404 (1941).

We granted leave to appeal[1] in order to determine whether the doctrine of election of remedies

---

[1] 414 Mich 864 (1982).

precludes Riverview from proceeding against appellee in this case, since Riverview has already obtained judgment, although unsatisfied, against the third-party converters, ELM and DiBiasio.

I

The doctrine of election of remedies has been much criticized as harsh and inequitable. Much scholarly writing has addressed the alleged inequities of the doctrine, and the case has been repeatedly advanced in the literature for restricting the application of the doctrine and even suggesting its abolition.[2]

We are not required to evaluate the validity of the doctrine in this case, however, because we conclude that the doctrine is inapplicable in the sense that it does not preclude Riverview from proceeding against the bank. In order to appreciate why the doctrine of election of remedies is not a bar to Riverview's action against the bank, it is necessary to appreciate the nature of the doctrine and the requirements for its application.

While scholarly definitions of the doctrine of election of remedies abound, it suffices to say that, in the context of this case, the doctrine is merely a procedural rule which precludes one to whom there are available two inconsistent remedies from pursuing both. *United States v Oregon Lumber Co,* 260 US 290, 304; 43 S Ct 100; 67 L Ed 261 (1922) (Brandeis and Holmes, JJ., and Taft, C.J., *dissenting),* citing Hine, *Election of Remedies, A Criticism,* 26 Harv L Rev 707, Griffith, *Election Be-*

---

[2] See, *e.g.,* Hine, *Election of Remedies, A Criticism,* 26 Harv L Rev 707; Note, *Election of Remedies: A Delusion?,* 38 Colum L Rev 292; Fraser, *Election of Remedies: An Anachronism,* 29 Okla L Rev 1. See *Walraven v Martin,* 123 Mich App 342; 333 NW2d 569 (1983). *Cf. Gruskin v Fisher,* 405 Mich 51; 273 NW2d 893 (1979) (election of remedies in the context of land contract defaults).

*tween Alternative Remedies,* 16 L Q Rev 160, and Galbraith, *Election Between Alternative Remedies,* 16 L Q Rev 269; *Bernstein v United States,* 256 F2d 697 (CA 10, 1958), *cert dis* 358 US 924 (1959); *Ray v Beneficial Finance Co,* 92 NJ Super 519; 224 A2d 143 (1966); *Montgomery v Cook,* 76 NM 199; 413 P2d 477 (1966). Its purpose is not to prevent recourse to alternate remedies, but to prevent double redress for a single injury. Dobbs, Remedies, § 1.5, p 15; *St Paul Fire & Marine Ins Co v Michigan National Bank of Detroit,* 660 F2d 196 (CA 6, 1981); *Bank of Commerce v Paine, Webber, Jackson & Curtis,* 39 Wis 2d 30; 158 NW2d 350 (1968); *Cashen v Owens,* 225 Minn 25; 29 NW2d 440 (1947). See *Roberts v Sears, Roebuck & Co,* 617 F2d 460 (CA 7, 1980), *cert den* 449 US 975 (1980). In order that the election of remedies doctrine apply in any context, three prerequisites must be met. They were identified by this Court in *Ielmini, supra,* quoting 18 Am Jur, Election of Remedies, § 9, pp 132-133:

" 'It is apparent from the definition and character of the doctrine of election of remedies already given that certain well recognized conditions must exist before the election becomes operative. These may be termed the "elements of election," and their presence is essential in every instance in which the doctrine is to be successfully invoked. Since election presupposes a choice, it is obvious that a first inquiry in all cases where it is sought to charge a litigant with the consequences of having elected a remedy must be directed to the question whether at the time of the election there were two or more remedies available to him. If it is found that alternate remedies existed, their character must then be looked into in order to ascertain whether they are consistent and cumulative or inconsistent, for, as will be seen, the doctrine of election of remedies has application only where the remedies are of the latter charac-

ter. Available and inconsistent remedies being disclosed, it must further appear that the party has actually chosen and pursued the one to the exclusion of the other or others. Stated briefly, *the essential conditions or elements of election of remedies are:* (1) *The existence of two or more remedies;* (2) *the inconsistency between such remedies; and* (3) *a choice of one of them.* If any one of these elements is absent, the result of preclusion does not follow.'" *Ielmini,* 298 Mich 66-67 (emphasis supplied).

Whether the doctrine bars prosecution of Riverview's claim in this case depends therefore upon a determination whether, at the time the cause of action against the bank accrued, the three conditions for application of the doctrine obtained. Clearly the first condition was met: two remedies existed, one against the converters of the funds, ELM and DiBiasio, and one against the bank for wrongful payment of the funds. The third requirement, a choice between available remedies, was likewise met because Riverview elected to proceed initially against ELM and DiBiasio and, in fact, obtained a judgment, although it remains unsatisfied. There remains the question whether the second of the necessary requirements for application of the doctrine obtained: inconsistency of the remedies.

The Court of Appeals found the requisite inconsistency, relying upon the analysis employed by this Court in the factually comparable *Ielmini* case. Certainly, it is indisputable that *Ielmini* is a statement of the majority rule in this country concerning the doctrine of election of remedies in the context of separate lawsuits by a depositor against a third-party converter and a bank for unauthorized payment to the converter of sums on deposit in the bank, and, if the reasoning of *Iel-*

*mini* is sound, it controls the issue before us and precludes Riverview's action against the bank.

In *Ielmini,* Mr. Negri, who was treasurer of a local lodge of a voluntary fraternal association, was ordered by the supreme lodge to liquidate the affairs of the local organization. In doing so, Negri withdrew $1,137 on deposit in a savings account at the defendant bank. The bank received a written indemnity from Negri holding it harmless for this withdrawal. A lawsuit was later initiated by the local lodge against Negri and the supreme lodge for restitution of the funds withdrawn, and the plaintiffs ultimately prevailed. Unable to satisfy the judgment, the plaintiffs then sued the defendant bank for conversion. Although the bank raised the affirmative defense of election of remedies, the plaintiffs again prevailed. This Court reversed, concluding that the two remedies pursued by the plaintiffs were inconsistent. In reaching its decision, this Court first discussed the doctrine of election of remedies and then concluded:

> "In the chancery suit [against the converters] the trial court determined that the Supreme Grove [lodge] and Frank Negri wrongfully appropriated the moneys belonging to plaintiffs. Such a determination was the basis for the decree entered. See *Koontz v Bay Circuit Judge,* 224 Mich 463; 194 NW 1018 (1923). It was also determined that defendants wrongfully possessed money belonging to plaintiffs rather than money belonging to the bank. Otherwise, plaintiffs could not have been defrauded or had a decree entered in their favor. The chancery action was a ratification by plaintiffs of the action of the bank in paying the money to Negri as treasurer of the local lodge. The present action against defendant bank is based upon the theory that the bank has in its possession or should have in its possession certain moneys belonging to plaintiffs. The positions taken by plaintiffs in the chancery and law cases are inconsistent.

"It is our opinion that when plaintiffs elected to pursue and charge Negri and the Supreme Grove for money had and received from the bank, plaintiffs elected to affirm the payment made by the bank to Negri." 298 Mich 68.

On the foregoing reasoning, the doctrine of election of remedies was held to bar the second suit.

Acknowledging that *Ielmini* is an expression of the majority view on election of remedies in the context of wrongful bank withdrawals, Riverview argues that it is a poorly reasoned decision and should be overruled and stand as no objection to Riverview's action against appellee in this case because the two remedies pursued by Riverview are not, upon a correct analysis, inconsistent.

Appellee asserts, on the other hand, that the *Ielmini* rule is sound and controls this litigation.

We turn then to examine the rationale of *Ielmini.*

The keystone of this Court's reasoning in *Ielmini* is the theory that when a depositor's funds in an ordinary checking account are wrongfully paid by the bank to a person not authorized to withdraw them, the depositor, by electing to sue the third-party converter, impliedly asserts that the money paid to the converter by the bank was the depositor's money and that the depositor is therefore entitled to its return from the converter. The essence of the analysis is the legal fiction that the funds paid by a bank from a depositor's checking account to an unauthorized third party are either the funds of the depositor or the bank's funds depending not upon any objective criteria such as a contract of bailment of the funds, but upon the fortuitous choice of the injured depositor to proceed against the third party first or against the bank first, for recovery of the funds. The fiction is

that if the depositor chooses to proceed first against the third-party converter for recovery of the funds, he has, by that choice, taken the position that the third party possesses his money and has asserted, by necessary implication, that it was the depositor's money and not the bank's money which the bank paid to the third-party converter. Consequently, the theory goes, the depositor cannot later sue the bank to recover his funds because in first suing the converter he has "ratified" or "affirmed" the fact that the bank no longer has his funds, having paid them to the converter.

It is argued that an injured depositor cannot have it both ways and, thus, having chosen to proceed either against the converter or against the bank, has elected one remedy to the preclusion of the other.[3]

This analysis, first adopted by this Court in *Ielmini,* now seems to be well ensconced in the jurisprudence of this state. See *Weaver v Detroit Bank,* 330 Mich 366; 47 NW2d 650 (1951).

In keeping with this theory, the appellee asserts, and the Court of Appeals held, that when Riverview sought recovery initially against ELM and DiBiasio, it implicitly "affirmed" or "ratified" the

---

[3] This rationale, which we have said is the majority view on the issue in this country, is succinctly articulated in 9 CJS, Banks and Banking, § 356, p 752:

*"Election of remedies.* A plaintiff who sues a drawee bank on a check paid by it on a forged indorsement takes the position that the bank still has his money, that the money paid out by the bank was the bank's money, and that such payment was not binding on plaintiff; and, where he sues another who has indorsed such check over to the drawee bank, he necessarily takes the position that the money paid by the drawee bank was wrongfully paid and, therefore, wrongfully detained. Such positions are mutually contradictory, and in choosing his remedies plaintiff cannot adopt both positions."

While the cited authority describes the rule in the context of a forged instrument, and the withdrawals in this case were upon authentic but unauthorized signatures, the rule applies in both situations.

fact that the converters were in possession of Riverview's funds, albeit wrongfully, and that the bank no longer had the funds and cannot therefore be later held obligated to pay them to Riverview when the judgment against the converters could not be satisfied.

We think that analysis, which indeed underlies the doctrine of election of remedies in the context of this kind of case, is seriously flawed because it rests upon an erroneous premise: the fiction that monies on deposit in a bank in an ordinary checking account and later paid out upon the demand of an unauthorized withdrawer are not the bank's funds because, in proceeding against the converter, the depositor has impliedly asserted that they are not. The theory that they are the funds of the depositor or the funds of the bank depending upon the injured depositor's decision to proceed first against the converter or first against the bank is a fiction unsupportable in logic or fairness.

We think the sounder approach is to recognize that the relationship between a depositor and a bank in a case such as this is one of debtor and creditor. *Owosso Masonic Temple Ass'n v State Savings Bank,* 273 Mich 682, 689-691; 263 NW 771 (1935); *Wettlaufer Mfg Corp v Detroit Bank,* 324 Mich 684, 692; 37 NW2d 674 (1949); *Benge v Michigan National Bank,* 341 Mich 441, 445; 67 NW2d 721 (1954); *Hindman v Community National Bank of Pontiac,* 14 Mich App 746, 748; 165 NW2d 894 (1968); *In re Peoples State Bank of Auburn,* 51 Mich App 421, 444; 215 NW2d 722 (1974); *Hennesy Equipment Sales Co v Valley National Bank,* 25 Ariz App 285, 287; 543 P2d 123 (1979). When funds are deposited in an ordinary checking account, they become the bank's funds for such use as the bank deems appropriate, sub-

ject only to the bank's duty to repay to the creditor-depositor an amount equal to the sums deposited upon the call of the depositor or his authorized representative. The money, once deposited, becomes the bank's money, the depositor having only an entitlement to recoupment of an equivalent sum upon demand, having loaned the bank the amount deposited. Such funds become a fungible part of the bank's general assets and retain no separate identity.

Similarly unpersuasive is the related theory of *Ielmini* that the depositor, by suing the converter first, "ratifies" or "affirms" "the payment made by the bank to [the converter]." 298 Mich 68.

Although this "ratification" or "affirmance" concept was essential to the *Ielmini* Court's decision, it is difficult for us to conceive how Riverview, by suing ELM or DiBiasio, ratified or affirmed the action of First National Bank in wrongfully paying out the money. Riverview sought redress from ELM and DiBiasio without regard to or comment upon the bank's liability or nonliability. Riverview's decision to proceed against ELM and DiBiasio cannot be considered an election by Riverview to treat the act of First National Bank as authorized, nor was Riverview's cause of action valid only if it had affirmed First National Bank's action. See 1 Restatement Agency, 2d, §§ 82, 83, pp 210-213; *David v Serges,* 373 Mich 442, 444; 129 NW2d 882 (1964). Riverview's action against ELM and DiBiasio was not a ratification or an affirmance of First National Bank's action in wrongfully honoring checks drawn upon Riverview's account by a drawer not authorized to do so.

In *Hennesy Equipment Sales Co v Valley National Bank,* 25 Ariz App 285, 287-288; 543 P2d 123 (1979), the Arizona Court of Appeals, on facts

comparable to those before us today, analyzed and rejected the *Ielmini* analysis and the majority view, recognizing in the process, as we do, that the prevailing view misconceives the relationship between a depositor and a bank in an ordinary commercial transaction:

"The relationship between the bank and its checking account depositor is that of debtor and creditor, the deposit being a loan to the bank without interest, and the money so deposited belongs to the bank. *Valley National Bank v Witter,* 58 Ariz 491; 121 P2d 414 (1942); *Davies & Vincent v Bank of Commerce,* 27 Ariz 276; 232 P 880 (1925). It is therefore somewhat fallacious to speak in terms of the bank paying its money or the depositor's money, all the money as such belongs to the bank and the bank is merely discharging its debt to the depositor, pro tanto, by payment of the depositor's checks. *V H Juerling & Sons, Inc v First National Bank,* 143 Ind App 671; 242 NE2d 111 (1968). Implied in this debtor-creditor relationship is the contractual undertaking on the part of the bank that it will only discharge its obligation to the depositor upon the authorized signature of the depositor. *Neal v First National Bank,* 26 Ind App 503; 60 NE 164 (1901).

"Upon analysis then, the depositor's cause of action against the bank for payment of a forged check is based upon a breach of the bank's contractual obligation to satisfy its debt only upon the authorized signature of the depositor—in essence, to re-establish the credit balance enjoyed by the depositor prior to the debit to that balance of the forged instrument.

"Looking to the liability of the forger, the basis of the bank's cause of action against the forger is clear—either conversion of the bank's money; money had and received, or fraud. On the other hand, the basis of the depositor's cause of action against the forger is not that clear. The traditional view is that it is based upon conversion of the depositor's money or money had and received. In order, however, to make the money received by the forger the depositor's money, a legal fiction has to be created; that is, saying the forger now

has the depositor's money by the depositor ratifying the bank's wrongful act of honoring the check. That it is a legal fiction is obvious from our previous discussion— the actual money received from the bank is always the bank's money, merely the bank's debt is satisfied by the payment. Moreover, acts giving rise to an implied ratification usually denote a benefit being bestowed on the ratifier. What benefit, other than the right to maintain the action, is bestowed on the depositor by the forger's wrongful act? There simply is none. Also, the very act of bringing suit against the forger by the depositor is not a ratification of the payment of money, but a disavowal of the forger's act and the statement by the depositor that the forger is a wrongdoer.

"What then is the harm suffered by the depositor at the hands of the forger that really is the basis of the cause of action? It appears to us that the forger's wrongful act causes two harms—one to the bank for fraudulently inducing it to relinquish its money and one to the depositor by wrongfully causing his bank account to be debited.

"Aside from dictates of public policy which should subject a forger to as many legal actions as the law could devise, it would appear that the only harm caused the depositor is the wrongful interference with its contractual debtor-creditor relationship with the bank —a tort. When viewed in this light, we see no inconsistency in substantive rights by pursuing one party (the bank) who breaches its contractual obligation and also pursuing another party (the forger) who wrongfully interferes with that contractual relationship."

We think, as the *Hennesy* Court did, that the rationale of the *Ielmini* rule is unsound and that its application leads inexorably to unwarranted and often unfair results. We conclude, therefore, that *Ielmini* should be overruled.

## II

How, then, should the facts of this case be tested

for application of the doctrine of election of remedies?

Our answer is that in determining whether the lawsuits filed against ELM and DiBiasio on the one hand, and the bank on the other, are inconsistent for purposes of the election of remedies doctrine, the focus should be upon the nature of the wrongs done to the innocent depositor by the converters and the bank, and not upon the legal fiction concerning the *ownership* of the deposited funds as determined by the fortuitous decision of the depositor to proceed against one wrongdoer before the other.

Assuming the truth of Riverview's factual allegations for purposes of reviewing the correctness of the accelerated judgment in this case, it is clear that Riverview is the victim of separate and distinct wrongs at the hands of the converters and the bank. Riverview's cause of action against ELM and DiBiasio is for fraud, conversion, and breach of fiduciary duty. Regardless of the semantics, the essence of the cause of action against the converters is grounded in tort—be it fraud, conversion, or breach of fiduciary duty. The converters intentionally interfered with the appellants' contractual relationship with the bank. Riverview's cause of action against the bank is for breach of its contractual obligation to Riverview by paying a third party sums drawn upon Riverview's account without its authority, and wrongfully debiting the account. They are separate and distinct wrongs committed by different parties, calling for different remedies. The remedies, while concurrent, are consistent. There is nothing in the appellant's effort to seek redress against the converters for the wrong done by them which is inconsistent with a subsequent effort to seek redress from the bank for

its failure to honor its contractual obligations. While the converters and the bank are each, on the facts alleged, guilty of separate and distinct wrongdoing, Riverview suffered but a single injury. Consequently, Riverview may have but one satisfaction for that injury and may not have double redress. The remedies sought do not proceed from opposite and irreconcilable claims of right and are not inconsistent in the sense that a party may not logically pursue one remedy without renouncing the other.

Since the wrongs for which Riverview seeks redress are separate and consistent, as opposed to inconsistent, the doctrine of election of remedies does not bar the appellant's cause of action in this case.

To the extent that *Ielmini* is inconsistent with what is said here, it is overruled.

The judgment of the Court of Appeals is reversed.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICKLEY, and BOYLE, JJ., concurred with RYAN, J.

CAVANAGH, J., took no part in the decision of this case.