# Court of Appeals, State of Michigan

## ORDER

Harris Cheema v Progressive Marathon Insurance Company

Docket No.    355910

LC No.        19-003321-NF; 18-014071-NF

Kathleen Jansen
Presiding Judge

Thomas C. Cameron

Michelle M. Rick
Judges

The motion for reconsideration of defendant-appellee, Progressive Marathon Insurance Company is GRANTED, and this Court's opinion issued June 2, 2022 is hereby VACATED. A new opinion is attached to this order.

The motion for reconsideration of defendant-appellee, State Farm Mutual Automobile Insurance Company is DENIED.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

September 29, 2022
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HARRIS CHEEMA and OVERLAND
TRANSPORTATION, LLC,

UNPUBLISHED
September 29, 2022

Plaintiffs-Appellants,

v

No. 355910
Wayne Circuit Court
LC Nos. 18-014071-NF; 19-003321-NF

PROGRESSIVE MARATHON INSURANCE
COMPANY and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

Defendants-Appellees,

and

GOLDEN INSURANCE AGENCY, LLC, and SAM
SAEIDI,

Defendants.

ON RECONSIDERATION

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

In this dispute over no-fault insurance benefits, plaintiffs, Harris Cheema and Overland Transportation, LLC (Overland), appeal by right the trial court's order dismissing their claims against Progressive Marathon Insurance Company (Progressive) and State Farm Mutual Automobile Insurance Company (State Farm). Because we conclude that there were questions of fact that had to be resolved before the trial court could determine whether Progressive could properly rescind the policy at issue, and a question of fact as to whether Cheema was an owner of the motor vehicle involved in the accident, the trial court erred when it dismissed Cheema's claims against Progressive and State Farm under MCR 2.116(C)(10). Accordingly, we dismiss in part, affirm in part, reverse and vacate in part, and remand for further proceedings consistent with this opinion.

# I. BASIC FACTS

Cheema is the sole owner of Overland. Overland is a medical transportation company that transports patients to and from medical appointments. For the most part, insurance companies paid fees to Overland for the services that it provided. Cheema managed Overland and also worked as one of its drivers. Overland provided its drivers with its vehicles to transport passengers, and Cheema would sometimes run personal errands while on the way to or from a transport.

Cheema first went to Golden Insurance Agency, LLC, to purchase a commercial insurance policy for Overland's vehicles in 2017. When purchasing the policy, Cheema stated that he explained "in detail" to the agent what his business did. Cheema claimed that he had the same discussion when he purchased the new policy with Progressive in 2018. After describing his business, the agent suggested a particular policy, and Cheema accepted that policy.

Sam Saeidi testified that he was the writing agent who handled Cheema's purchase of the Progressive policy. Saeidi stated that Cheema told him that his business offered a courtesy shuttle and did not collect any fees for its service.[1] Saeidi stated that he explained to Cheema what the phrase "transportation for hire" meant. Saeidi denied that Cheema ever told him that Overland billed insurance companies or workers' compensation for its transportation services. Saeidi was under the impression that Overland was a "not-for-profit" business and that Overland did not collect money for its services.

Cheema signed an application for insurance on behalf of Overland. The policy application represented that Overland did not transport passengers for hire. Specifically, the insurance application included the following question: "Does the insured ever transport passengers for hire?" Cheema answered: "No." The insurance quote also noted that Overland's business type was "Passenger Transportation (Not For Hire)." Cheema did not recall having a discussion with the agent about whether his business was a transportation-for-hire business. Cheema denied misrepresenting the nature of his business to the agent or telling the agent that Overland provided passengers with a courtesy shuttle only. Cheema stated that he thought that Overland was not a business that engaged in transportation for hire because Overland did not receive payment from people it transported. Rather, Overland was paid by third parties. Cheema thought that the agent correctly completed the application on the basis of the information that he provided, and he signed the application.

---

[1] Although we are not taking it into consideration when deciding the instant appeal, we note that Saeidi has made similar assertions in another case that is before this Court in Docket No. 359291. In that case, Golden Insurance and Saeidi assisted a company that provided transportation services to medical patients with obtaining an insurance policy. However, according to Saeidi, the business owner in that case failed to inform Saeidi that his business transported medical patients in exchange for compensation. Saeidi indicated that he understood that the company offered a courtesy shuttle. In contrast, the business owner testified that he informed Saeidi that his business transported medical patients. This information was obtained after the insurance company refused to pay PIP benefits following a motor vehicle accident.

On April 24, 2018, Cheema was operating one of Overland's vehicles for personal reasons and was involved in an accident. He injured his left knee, left elbow, and neck and possibly aggravated a prior injury.

Progressive sent Cheema a notice of cancellation of its policy that was effective July 14, 2018. Progressive stated that it was canceling the policy because it did not "have a program for passenger transportation for a fee in [Michigan]." In October 2018, Cheema sued Progressive for unpaid personal injury protection insurance (PIP) benefits.

In a letter dated November 29, 2018, Progressive rescinded the policy that had been issued to Overland and declared it void as of April 4, 2018. Progressive took this action claiming misrepresentation or fraud. In its cancellation letter, Progressive indicated that the rescission superseded "any notice of cancellation, notice of nonrenewal, notice of reinstatement or renewal."

In March 2019, Overland sued Golden Insurance and its principal, Saeidi. Overland alleged, in part, that Saeidi, who acted on behalf of Golden Insurance, had negligently completed the application and misadvised Cheema.

In April 2019, Cheema amended his complaint against Progressive to include State Farm as a defendant that provided coverage under a State Farm policy of a resident relative. Progressive, State Farm, and Golden Insurance moved to consolidate Cheema's case against the insurers with Overland's case against the agency because the cases all involved the same set of facts. The trial court granted the motion, consolidated the cases, and ordered that all the proceedings from the 2018 case be transferred into the 2019 case and closed the 2018 case.

State Farm and Progressive later moved for summary disposition of the claims against them. The trial court granted defendants' motions for summary disposition. The trial court acknowledged that there was a factual dispute as to whether Cheema caused the misrepresentation in the application, but determined that there was no factual dispute that Cheema agreed to the rescission. Therefore, it concluded that Progressive could not be held liable under the policy. The trial court also agreed that the undisputed evidence showed that Cheema was an owner of the Odyssey and that he had not maintained the required insurance. For that reason, the trial court ruled that Cheema was barred from obtaining PIP benefits. Accordingly, the trial court dismissed all the claims against Progressive and State Farm in Cheema's case.

In December 2020, Overland stipulated to the dismissal of its claims against Golden Insurance and Saeidi. This appeal followed.

## II. JURISDICTION

We first consider our jurisdiction, which is always within the scope of our review. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009).

Although the trial court ordered the merger of the two lower court cases and closed the first case, the two cases involved distinct claims and different parties. Overland's claims operated under the theory that the breaches of duty by Golden Insurance and Saeidi caused Progressive to void the insurance policy issued by Progressive to Overland. By contrast, Cheema's claims involved, in part, the assertion that Golden Insurance properly selected and sold the Progressive

-3-

policy to Overland and correctly identified the nature of Cheema's business. Moreover, the trial court did not recaption the cases to reflect the parties' changed statuses—instead, the parties continued to caption the cases separately and refer to them as consolidated even though they were ostensibly one case. It further appears that the cases were consolidated under MCR 2.505(A) rather than joined under MCR 2.205. If the cases were consolidated and not joined, the two cases would have retained their separate character, and each would have been subject to separate final orders. See *Chen*, 284 Mich App at 196-199.

To the extent that the two cases were consolidated, the trial court's order granting the motions for summary disposition by Progressive and State Farm would have been the final order for Cheema's case because it adjudicated all the disputes between Cheema and the insurers. See MCR 7.202(6)(a)(*i*). Accordingly, the relevant date for purposes of calculating the deadline for an appeal of right would be the date the trial court entered its order denying reconsideration. Because Cheema did not file his claim of appeal within 21 days of that order, this Court would not have jurisdiction to hear his appeal as an appeal of right if the two cases were merely consolidated. See MCR 7.204(A)(1)(d). Nevertheless, even if Cheema's appeal is untimely as an appeal of right, we choose to exercise our discretion and treat his appeal as an application for leave to appeal and grant the application. *Waatti & Sons Electric Co v Dehko*, 230 Mich App 582, 585; 584 NW2d 372 (1998).

We do not agree, however, that Overland is a proper party to this appeal. This Court has jurisdiction to hear appeals by parties who were aggrieved by the lower court's decision. See MCR 7.203(A). Overland did not assert any claims against the insurers and stipulated to the dismissal with prejudice of all its claims against Golden Insurance and Saeidi. The trial court also did not recaption the case to include Overland in Cheema's claims. As such, Overland is not an aggrieved party. See *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-292; 715 NW2d 846 (2006). Consequently, we conclude that Overland lacks standing to appeal, and we dismiss it from the appeal. See *id*. at 297.

## III. RESCISSION

### A. STANDARDS OF REVIEW

We first address Cheema's arguments that the trial court erred when it determined that Progressive was entitled to rescind its insurance policy and granted Progressive's motion for summary disposition on that basis.

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*

-4-

*v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

"Summary disposition is suspect where motive and intent are at issue or where the credibility of a witness is crucial. Furthermore, where the truth of a material factual assertion of a moving party is contingent upon credibility, summary disposition should not be granted." *Foreman v Foreman*, 266 Mich App 132, 135-136; 701 NW2d 167 (2005) (citation omitted). Summary disposition is improper if evidence is in conflict. *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003).

## B. THE REMEDY OF RESCISSION

In Michigan, every "owner or registrant of a motor vehicle required to be registered in this state" must "maintain security for payment" of PIP benefits and property protection insurance. MCL 500.3101(1). Although the Legislature required owners and registrants to purchase insurance policies and enacted a comprehensive scheme regulating such polices, the policies themselves remain contracts subject to the common law of contracts as modified by the no-fault act. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399-400; 919 NW2d 20 (2018). The Legislature did not limit the common-law remedies available to an insurer for misrepresentation or fraud. *Id*. at 400-401. As such, the remedies for misrepresentation and fraud remain, which includes the remedy of rescission. *Id*. at 401. Rescission is an equitable remedy that allows a party who was fraudulently induced to enter into a contract to void the contract. *Id*. at 408-409. "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id*. at 409. Rescission does not amount to a simple refusal to be bound by the contract, which would constitute a breach of contract if done improperly. Rather, an insurance policy that is properly rescinded is "considered never to have existed" as a result of the rescission. *Id*. at 408.

On appeal, Progressive maintains that it had the right to rescind the contract without any need for a court's approval. Progressive relies on foreign authorities for that proposition, but those authorities are merely persuasive, see *Franks v Franks*, 330 Mich App 69, 97 n 4; 944 NW2d 388 (2019), and inapplicable because our Supreme Court has already clarified the proper approach to handling claims of rescission.

Our Supreme Court has recognized that there traditionally was a distinction between equitable rescission and the right to rescind at law through mutual rescission. *MEEMIC Ins Co v Fortson*, 506 Mich 287, 310 n 19; 954 NW2d 115 (2020). Our Supreme Court has held that a party to an insurance policy contract does not have an absolute right to the equitable remedy of rescission on the ground of fraud in the inducement. See *Bazzi*, 502 Mich at 411. Moreover, although a party has the right to *attempt* to rescind a contract at law on the ground that he or she was induced to enter into the agreement by fraud, the rescinding party must adhere to strict requirements. See *Don McCullagh, Inc v Dimitroff*, 327 Mich 656, 658-659; 42 NW2d 775 (1950) (reciting the conditions that apply when a party wishes to assert the right of rescission). The party asserting the right to rescind the contract must promptly give notice of the decision to the other party after learning about the misstatements, and the rescinding party must adhere to the rescission. *Id*. at 659. The failure to adhere to the rescission may constitute a waiver of the right to rescind. *Id*. If the parties agree to the rescission, the contract is void as a matter of law. However, if the

other party opposes the attempted rescission, the matter becomes one for the courts. If there is a question of fact as to the validity of the rescission, it is normally for the finder of fact to resolve unless the undisputed facts show that a verdict should be directed in a party's favor. *Id*. (concluding that, because the undisputed evidence showed that the plaintiff continued to use the car and waived his right to rescind as a matter of law, the trial court should have directed a verdict in the defendant's favor on the issue of rescission).

In this case, Progressive asserted the right to rescind the insurance contract as a remedy for being fraudulently induced to enter into the contract. If the rescission was not mutual, then Progressive would have the burden to prove that it was entitled to the equitable remedy of rescission by establishing the elements of its affirmative defense of fraud. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017). Accordingly, in order to establish its right to summary disposition on the basis of fraud in the inducement, Progressive had to show that there was no material factual dispute that (1) Overland made a material misrepresentation, (2) the representation was false, (3) Overland knew it was false or made the representation with reckless disregard for the truth, and (4) it made the representation with the intention that Progressive would act on it. *Id*.

Progressive clearly established that Overland made a misrepresentation. The undisputed evidence shows that Overland was in the business of transporting passengers to and from appointments for a fee, which amounted to the transportation of passengers for hire. Moreover, Cheema admitted that he signed the application for insurance on behalf of Overland and that the application represented that Overland was not in the business of transporting passengers for hire. The fact that Overland—through Cheema—relied on Saeidi to fill out the application for insurance does not alter the fact that Overland was responsible for the misrepresentation. See *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 20-21; 592 NW2d 379 (1998) (noting that an independent insurance agent is the agent of the insured and not the insurer).

The undisputed evidence also shows that the representation was material because Progressive demonstrated that it would not have issued the policy had Overland accurately represented that it was in the business of transporting passengers for hire. See *Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547, 551 (1959); *Auto-Owners Ins Co v Comm'r of Ins*, 141 Mich App 776, 781; 369 NW2d 896 (1985) (defining a material misrepresentation as one that would affect the decision to accept the risk or would have increased the premium). It was also beyond reasonable dispute that Overland intended that Progressive rely on the representations in determining whether to issue the policy. As such, Progressive established that there was no material factual dispute as to three of the four elements of fraud. However, as the trial court correctly noted below, there *was* a factual dispute over whether Overland knew that the representation was false.

Cheema testified that he explained "in detail what [Overland] is" to Saeidi before the insurance policy was issued. Cheema agreed that this included "how [Overland] got money," which is mostly through insurance companies. When confronted with the fact that the policy application indicated that Overland was "not for hire," Cheema indicated that he did not recall having a discussion with anyone at Golden Insurance about what it meant to be "for hire." Cheema presented evidence that it was his understanding that a business that transports people "for hire" was a business that directly charged its passengers a fee—as opposed to charging a third party,

such as an insurer. He further presented evidence that—contrary to Saeidi's deposition testimony—Saeidi understood that to be the case as well. Specifically, Cheema presented a written summary of a contact that Progressive's investigator had with Saeidi. The investigator wrote that Saeidi told him that he wrote the policy for Overland and that Saeidi acknowledged that Cheema told him that his business did not transport passengers for hire. Nevertheless, Saeidi also told the investigator that Cheema told him that Overland billed Medicaid and Medicare. When the investigator asked Saeidi about his understanding of the phrase "for hire," Saeidi told him that that meant that the business charged people for their services, not Medicare or Medicaid.

The evidence permitted an inference that Saeidi may have led Cheema to believe that that was an accurate understanding of the phrase when completing the application. Although a finder of fact could disbelieve Cheema's evidence, this Court cannot make credibility determinations, *Foreman*, 266 Mich App at 136, and is required to view the evidence in a light most favorable to the nonmoving party when reviewing a motion for summary disposition, *El-Khalil*, 504 Mich at 160. Furthermore, "whether an insured has committed fraud is [generally] a question of fact for a jury to determine." See *Meemic Ins Co v Fortson*, 324 Mich App 467, 473; 922 NW2d 154 (2018). See also *Shelton*, 318 Mich App at 657 (stating that it is an element of fraud that the person making the misrepresentation knew that his or her representation was false). However, "[r]escission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995); see *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 509; 967 NW2d 841 (2021). An innocent misrepresentation is a proper basis upon which to grant rescission "without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016) (quotation marks and citation omitted). Nonetheless, even if the misrepresentation had been innocently made, the case must still be remanded for a balancing of the equities for the reasons explained below.

The trial court concluded that summary disposition was nevertheless proper because, in its view, the undisputed evidence showed that Cheema—acting on Overland's behalf—had accepted Progressive's decision to rescind the policy by using the refunded premiums to pay Overland's business expenses. That is, the trial court determined that there was no question of fact that Progressive established a mutual rescission at law.

The parties to a contract may explicitly agree to rescind the contract, but they may also do so impliedly through their actions. See *Young v Rice*, 234 Mich 697, 700-701; 209 NW 43 (1926). A mutual rescission occurs by implication when the parties by their actions mutually abandon all further performance and treat the contract as at an end, or when one of the parties distinctly abandons all rights and obligations under the contract and the other accepts the situation so created. *Id*. Progressive relies on the latter situation. As such, Progressive had to show that there was no reasonable factual dispute that Overland took actions that demonstrated that it accepted Progressive's decision to rescind and treated the policy as rescinded.

Progressive relies on *Puffer v State Mut Rodded Fire Ins Co*, 259 Mich 698; 244 NW 206 (1932), for the proposition that Overland's use of the refunded premiums established a mutual rescission as a matter of law. In *Puffer*, the insurer reduced the coverage applicable to a fire loss

after the loss and before giving notice of the change to the insured, which arguably rendered the change improper. *Id*. at 699-700. The insurer then sent the insured a check for the reduced amount and wrote on the check that the amount covered the loss "in full" and further wrote that the insured "jointly and severally" released the insurer. *Id*. at 700. The insured cashed the check. *Id*. at 700-701. Our Supreme Court determined that, by cashing the check and retaining the funds, the insured effected an accord and satisfaction that ended any dispute over the amount of the loss. *Id*. at 702. The Court reasoned that the insured could not accept the check under protest because receipt of the funds was contingent on the acceptance of the conditions stated on the check. *Id*.

The facts of the instant case are distinguishable from the facts in *Puffer*. In this case, Progressive sent a letter to Overland stating that it was exercising the right of rescission. Progressive separately refunded the premiums by electronic transfer. Progressive did not send Overland a check with unambiguous conditions on the acceptance of the funds. Indeed, it did not even refer to the refunded premiums in its letter asserting the right to rescind. Accordingly, Progressive did not put Cheema on notice that, by accepting and retaining the refunded premiums, Cheema would be agreeing to the rescission of the policy on behalf of Overland. Consequently, the evidence did not show that Cheema necessarily agreed to particular terms and conditions by the use of the refunded premiums, as occurred in *Puffer*. Instead, the trial court had to examine the evidence and determine whether there was a factual dispute about whether Overland accepted the rescission though its actions.

We find there is a factual dispute that exists here. A reasonable finder of fact could conclude that when Cheema spent the refunded premiums, he impliedly accepted Progressive's decision to rescind on behalf of Overland. But there was also evidence that Cheema did not accept the rescission. Cheema testified that he did not agree with Progressive's decision to rescind and presented evidence that he contacted his lawyer about it. He also called Golden Insurance to express his disagreement under the assumption that Golden Insurance was the proper party to correct the dispute. It was also noteworthy that Cheema had already sued Progressive for unpaid benefits under the policy *before* Progressive rescinded the policy. The evidence that Cheema took steps to dispute the rescission and had already sued Progressive to collect benefits under the policy is evidence from which a reasonable jury could find that Cheema did not accept the notion that the policy was fraudulently procured. Under these circumstances, a reasonable finder of fact could conclude that Cheema's decision to spend the refunded premiums did not imply that he accepted Progressive's attempted rescission on behalf of Overland. See *Young*, 234 Mich at 700-701.

Additionally, as our Supreme Court has explained, rescission is an equitable remedy that a trial court has the discretion to grant. *Bazzi*, 502 Mich at 409. When determining whether to apply the remedy, a trial court must balance all the equities, which includes the rights of third parties. *Id*. at 410-412. The trial court must consider a variety of factors when determining whether to apply the equitable remedy of rescission:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the

insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 411; 952 NW2d 586 (2020).]

This Court has also held that trial courts must balance the equities when determining whether to allow a mutual rescission at law in the same way that courts must do for equitable rescission, at least when the rights of an innocent third party are implicated in the rescission. *Univ of Mich Regents v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354808); slip op at 4-6. Consequently, to the extent that Cheema might be deemed an innocent third party, the trial court would have to balance his rights when determining whether to enforce a mutual rescission.

In this case, the trial court effectively treated Cheema and Overland as the same entity because Cheema was the owner of Overland and acted on Overland's behalf in procuring the insurance policy. However, in the absence of evidence that would warrant disregarding the entity's separate existence, courts must respect the separate existence of the entity. *Green v Ziegelman*, 310 Mich App 436, 450-451; 873 NW2d 794 (2015). Because the trial court did not determine that Overland's separate existence should be disregarded, it should have treated Cheema as a third party to the insurance agreement. The trial court could properly consider the fact that Cheema was Overland's principal when balancing the equities, but it also had to consider his status as an employee at the time of the accident and had to consider his culpability for the misrepresentation and whether it was innocent. See *Pioneer State*, 331 Mich App at 411. As already discussed, whether Cheema acted innocently was a question of fact that implicated the equities, so it could not be resolved on a motion for summary disposition. See *Franks*, 330 Mich App at 91-92 (stating that summary disposition may be appropriate when applying equity if there are no material factual disputes, but noting that a court sitting in equity may nevertheless need to take evidence when determining how to fashion its decree).

Cheema demonstrated that there were questions of fact as to whether Overland committed fraud in the inducement, whether Overland impliedly accepted the rescission, and questions of fact concerning whether rescission was an appropriate remedy should Progressive establish fraud in the inducement. Consequently, the trial court erred when it determined that Progressive was entitled to rescind the contract as a matter of law and erred when it dismissed Cheema's claims for PIP benefits on that basis.

## C. ELECTION OF REMEDIES DOCTRINE

Cheema also argues on appeal that Progressive was barred from rescinding the contract as a matter of law because it elected its remedy when it chose to cancel the policy and could not later change its mind and choose to rescind the policy. We disagree that the common-law doctrine of election of remedies bars Progressive from asserting rescission.

The election of remedies doctrine is "merely a procedural rule. . . ." *Riverview Co-Op, Inc v First Nat'l Bank & Trust Co of Mich*, 417 Mich 307, 311; 337 NW2d 225 (1983). We review questions of law de novo. *Hamed v Wayne Co*, 490 Mich 1, 8; 803 NW2d 237 (2011).

The common-law doctrine of election of remedies is a procedural rule that precludes a party from pursuing two inconsistent remedies. *Riverview Coop, Inc v The First Nat'l Bank & Trust Co of Mich*, 417 Mich 307, 311; 337 NW2d 225 (1983). "Its purpose is not to prevent recourse to alternate remedies, but to prevent double redress for a single injury." *Id*. at 312. The elements of election of remedies are (1) the party against whom the doctrine is to be enforced knew that he or she had two or more remedies available at the time of election; (2) the remedies were inconsistent; and (3) the party chose one of the remedies to the exclusion of the other. *Id*. at 312-313; see also *In re Mahon's Estate*, 290 Mich 193, 197; 287 NW 430 (1939) (stating that the doctrine of election of remedies only applies when, with full knowledge of the facts, a party makes a deliberate choice between two inconsistent remedies). "If any one of these elements is absent, the result of preclusion does not follow." *Riverview Coop, Inc*, 417 Mich at 313 (quotation marks and citation omitted).

In this case, the election of remedies doctrine is inapplicable. The accident occurred in April 2018. In May 2018, Progressive learned that Cheema had used the vehicle that was involved in the accident for patient transportation. A Progressive representative contacted Saeidi, who indicated that Overland transported patients to physical therapy but that Overland did not get paid for its services. In June 2018, Cheema was informed that his insurance policy would be cancelled on July 14, 2018, but Progressive continued its investigation into whether Cheema was entitled to benefits under the policy. On July 20, 2018, Cheema submitted to an examination under oath and testified that Overland had consistently received payments for transporting patients. In August 2018, Progressive contacted Saeidi again. Saeidi indicated that Cheema had reported that he billed Medicare and Medicaid for Overland's services. In November 2018, Progressive rescinded the insurance policy. Thus, the record reflects that Progressive did not know that it had two remedies when it issued the cancellation. Indeed, there is no evidence that Progressive was aware that Overland had consistently billed for its services until Cheema submitted to an examination under oath in July 2018. The election of remedies doctrine is inapplicable.

Moreover, we question whether the election of remedies doctrine would apply under the circumstances of this case. The purpose of the election of remedies doctrine is to "prevent double redress for a single injury." *Riverview Coop, Inc*, 417 Mich at 312. In this case, there is no danger of Progressive obtaining double recovery because Progressive returned Overland's premium. Additionally, contrary to Cheema's arguments on appeal, the facts in this case are distinguishable from the facts in *Burton v Wolverine Mut Ins Co*, 213 Mich App 514; 540 NW2d 480 (1995). Indeed, unlike the insurer in *Burton*, Progressive did not cancel the policy *before* the motor vehicle accident in this case occurred. *Id*. at 517.

IV. STATE FARM'S MOTION

A. STANDARD OF REVIEW

Cheema also argues that the trial court erred when it granted State Farm's motion for summary disposition on the ground that Cheema was barred from obtaining PIP benefits because he was an owner of the Odyssey and he failed to maintain the required insurance. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Glasker-Davis*, 333 Mich App at 229. This Court also reviews de novo whether the trial court properly interpreted and applied the relevant statutes. See *In re Carroll*, 300 Mich App at 159.

## B. ANALYSIS

The Legislature provided that every "owner or registrant of a motor vehicle required to be registered in this state" must "maintain security for payment" of PIP benefits and property protection insurance. MCL 500.3101(1). An owner or registrant who does not maintain the required coverage is not entitled to be paid PIP benefits. MCL 500.3113(b). An owner or registrant can "maintain" the required insurance coverage without purchasing such coverage in his or her own name. *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 186-192; 934 NW2d 674 (2019). An owner is defined to be, in relevant part, a person "renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days," MCL 500.3101(3)(*l*)(*i*), or a person that holds legal title to the motor vehicle, MCL 500.3101(3)(*l*)(*iii*).

In this case, if Progressive properly rescinded the insurance policy, then the Odyssey was uninsured under the No-Fault Act. MCL 500.3101(1). See *Bazzi*, 502 Mich at 408-409 (recognizing that a rescinded contract is treated as having never existed). And if Cheema was also deemed to be an owner of the minivan titled in the name of his business, then he is not eligible for PIP benefits from State Farm because he failed to maintain the required insurance. See MCL 500.3113(b).

It is undisputed that the Odyssey was registered and titled in Overland's name. As such, Overland was both the actual owner and the registrant. See *Titan Ins Co v State Farm Mut Auto Ins Co*, 296 Mich App 75, 86-92; 817 NW2d 621 (2012) (discussing the distinction between an owner and a registrant and concluding that a person can remain a registrant even after transferring title to a vehicle). State Farm nevertheless argues that Cheema was a co-owner because he admitted that had absolute control over the Odyssey, so in State Farm's view of the evidence, Cheema had the "use" of the Odyssey for a period "greater than 30 days" within the meaning of MCL 500.3101(3)(*l*)(*i*). The trial court agreed and concluded on that basis that, as a co-owner with Overland, Cheema had to maintain the coverage required by MCL 500.3101(1). Because the Odyssey did not have the required insurance as a result of the rescinded policy, the trial court held that Cheema was barred from obtaining PIP benefits under MCL 500.3113(b).

More than one person can be the owner of a vehicle under the No-Fault Act, and whether a particular person was an owner is normally a question of fact. *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 133; 489 NW2d 137 (1992). When the Legislature defined owner to include people who had the "use" of a motor vehicle, the Legislature intended to prevent users of motor vehicles from obtaining the benefits of PIP coverage without purchasing insurance through the expedient of titling the vehicle in the names of family members. *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999). Nevertheless, this Court has noted that the Legislature associated the phrase "having the use" of the motor vehicle with renting or leasing the vehicle and concluded that that language showed that the Legislature did not intend that all use of a vehicle for 30 days amounted to having the use of the motor vehicle. *Id*. at 690-691. Instead, the language showed that "having the use" refers to proprietary or possessory usage, "as opposed to merely incidental usage under the direction or with the permission of another." *Id*. at 691.

In this case, State Farm presented evidence that Cheema controlled access to the Odyssey and could, in theory, make use of the Odyssey at any time and for any purpose. That evidence,

however, did not by itself establish that Cheema was an owner. Cheema owned and managed Overland and acted as its agent when determining whether and to whom the Odyssey should be assigned, but Overland was—in the absence of evidence to disregard its form—a separate entity. See *Green*, 310 Mich App at 451. Therefore, Cheema's acts as Overland's agent must be distinguished from the acts that Cheema took in his individual capacity. Stated another way, the trial court needed to consider whether Cheema managed his own use of the Odyssey consistent with his status as an employee of Overland.

Cheema testified that he had control over the Odyssey, but he also testified that Overland's three vans were used exclusively for Overland's business. He stated that he routinely directed his drivers to the locations where they had to transport patients. He further testified that there were other vehicles for his personal transportation needs, which included a Toyota titled in his name. Cheema admitted that he sometimes used Overland's vehicles to run errands before or after transporting a passenger, but he also stated that he paid himself whenever he acted as a driver for Overland.

Cheema's testimony permitted an inference that, Cheema did not have unfettered use of the Odyssey for purposes outside of Overland's business and that he respected the limitations on that use. In the absence of evidence that Cheema routinely misused his status as the owner of Overland to treat Overland's vehicles as personal vehicles, a reasonable finder of fact could conclude from Cheema's testimony that he did not have more than incidental use of the Odyssey with the permission of his employer, Overland. See *Ardt*, 233 Mich App at 690-691. Stated another way, a reasonable finder of fact could conclude that Cheema respected the limitations on his use of the Odyssey imposed by Overland's policies and, therefore, was not an owner within the meaning of MCL 500.3101(3)(*l*)(*i*).

Because there was a question of fact as to whether Cheema was an owner required to maintain no-fault coverage under MCL 500.3101(3)(*l*), the trial court erred when it determined that, as a matter of law, Cheema was an owner who would be barred from seeking PIP benefits under MCL 500.3113(b), if Progressive properly rescinded the policy at issue. For that reason, even if Progressive properly rescinded the policy, a reasonable finder of fact could find that Cheema was not an owner required to maintain insurance on the Odyssey under MCL 500.3101(3)(*l*). If a reasonable finder of fact made that finding, State Farm would be next in priority for the payment of PIP benefits as the insurer of a member of Cheema's household. See MCL 500.3114. Consequently, the trial court erred when it determined that there were no circumstances under which State Farm could be liable for payment of PIP benefits.

The trial court should have denied State Farm's motion for summary disposition.

V. CONCLUSION

Because Overland was not aggrieved by the trial court's decision to grant the motions for summary disposition by Progressive and State Farm, we dismiss Overland's appeal.

We conclude that the trial court erred when it granted the motion for summary disposition in favor of Progressive. There were questions of fact that had to be resolved before the trial court could determine whether Progressive was entitled to the equitable remedy of rescission or

-12-

determine whether Progressive established a mutual rescission at law. Additionally, even if Progressive established its right to rescind in equity or at law, there were questions of fact implicating whether the trial court should enforce the remedy. The trial court did not err when it determined that Progressive was not barred as a matter of law from asserting rescission under the doctrine of election of remedies.

The trial court also erred when it granted State Farm's motion for summary disposition. Whether Cheema was an owner of the Odyssey under the No-Fault Act was a question of fact. As such, even if Progressive establishes its right to rescind, Cheema might not be precluded from obtaining PIP benefits from State Farm under MCL 500.3113(b).

For these reasons, we reverse the trial court's opinion and order granting the motions for summary disposition by Progressive and State Farm, vacate that opinion and order, and remand for further proceedings.

Dismissed in part, affirmed in part, reversed and vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff as the prevailing party may tax costs. MCR 7.219(A).

/s/ Kathleen Jansen
/s/ Michelle M. Rick