*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROVIN VINOD,

          Plaintiff/Counterdefendant-Appellee,

UNPUBLISHED
October 27, 2022

v

No. 358751
Washtenaw Circuit Court
LC No. 19-001315-CH

PAULINE PROPERTIES, LLC,

          Defendant/Counterplaintiff-Appellant.

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

In this action to quiet title, Pauline Properties, LLC ("defendant") appeals as of right the trial court's order granting Rivon Vinod's ("plaintiff") motion for summary disposition and its finding that a prior stipulated order quieting title to the disputed property in defendant's favor was a forfeiture agreement. We affirm.

On September 21, 2015, plaintiff entered into a land contract with defendant with respect to a residential property defendant owned in Ann Arbor. According to the land contract, the sale price of the property was $300,000, of which plaintiff had already paid $30,000 to defendant. Plaintiff was to pay defendant $1,620 per month beginning in November 2015, as well as pay the property taxes on the property. Plaintiff was further required to pay off the entire balance by March 31, 2018 (or earlier without penalty), by way of a balloon payment. After the sales price was paid in full, defendant was to provide a warranty deed for the property to plaintiff.

According to plaintiff, the land contract price was paid in full. In a December 3, 2019 complaint against defendant to quiet title to the property, plaintiff asserted that defendant was improperly clouding the title to the property. Plaintiff thus requested the trial court grant him the equitable relief of entering a judgment declaring that plaintiff holds full legal and equitable title to the property.

Defendant, however, claimed that it held the deed to and interest in the property due to plaintiff's breach of the land contract. Defendant thus filed a countercomplaint to quiet title to the property in its favor. Defendant asserted that plaintiff failed to pay the property taxes on the property, failed to make all of the required monthly payments on the property, failed to make the

-1-

balloon payment by March 31, 2018, and conveyed some of its interest in the property to a third party without providing defendant with a copy of the assignment documents, thus breaching the land contract. Defendant sought a declaratory judgment that it was the lawful fee-simple absolute owner of the property and that plaintiff breached the contract and owed defendant the entire unpaid balance of the land contract, among other things.

Plaintiff moved for summary disposition on defendant's countercomplaint, asserting that he made timely monthly installment payments on the property but that for an unknown reason, defendant never cashed or negotiated his check payments and refused to do so. Plaintiff further argued that defendant's sought relief could not be found in filing its countercomplaint in the instant lawsuit but that defendant instead must choose, in accordance with Michigan law, to foreclose on the land contract or file a forfeiture action in the district court. According to plaintiff, because defendant did not pursue either of the proper remedies for its claimed breach of contract, it cannot eliminate plaintiff's interest in the property.

Before the motion for summary disposition was heard, the parties agreed to a partial resolution of the matter. On November 23, 2020, the trial court entered the parties' stipulated order "quieting title and setting procedure for closing case." The order principally provided that title to the property was quieted in the name of defendant and the remaining issues in the case relating to the parties' competing claims for monetary damages or compensation of any nature would be heard in December 2020 if the parties could not resolve the remaining issues.

Plaintiff thereafter refiled his motion for summary disposition on defendant's counterclaim. Citing MCR 2.116(C)(8) and (10), plaintiff essentially reasserted the same arguments he did in his first motion for summary disposition. Plaintiff added, however, that defendant's counterclaim served as an attempt to double-dip by taking possession of the property and still seeking damages under the land contract. Plaintiff asserted that Michigan law requires either a forfeiture proceeding to take possession of the property *or* that defendant seek acceleration of the debt, file a foreclosure action, sell the property, and determine whether there is a surplus or deficiency. Defendant disagreed.

The trial court[1] agreed with plaintiff and, on September 16, 2021, issued an order granting plaintiff's motion for summary disposition and in final judgment. The trial court opined that plaintiff correctly stated the law in Michigan as it pertains to land contracts and forfeiture/foreclosure. It stated that the issue, then, was whether the November 23, 2020 stipulated order was one for forfeiture or for foreclosure. The court found that the language in the land contract supported a finding that the parties entered into a forfeiture agreement because the contract clearly contains a forfeiture provision and it was obviously defendant's intent to continue to possess the property if plaintiff failed to perform any part of the land contract. Further, the contract provided that defendant's "other remedies" were contingent on defendant seeking possession of the property because of a breach. Any remaining remedies were remedies available to defendant prior to a forfeiture occurring. The trial court thus found that the November 23, 2020 order was a stipulation for a forfeiture and, as a result, defendant could not pursue any deficiencies from

---

[1] The trial judge who issued the November 23, 2020 stipulated order retired. Thus, a different judge addressed and resolved plaintiff's second motion for summary disposition.

plaintiff. Finding that neither party owed the other any further obligation, the court granted plaintiff's motion for summary disposition, and denied all requests for costs, attorney fees, and any further monetary damages. This appeal followed.

We review de novo a circuit court's summary disposition ruling. *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010). A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint based on the pleadings alone. *Id*. A court may grant summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." "When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Dalley*, 287 Mich App at 304-305. Summary disposition should be granted under this subrule only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

A motion for summary disposition made under MCR 2.116(C)(10), on the other hand, tests the factual sufficiency of the complaint. *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016). "The Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* at 472-473. MCR 2.116(G)(4) requires that, once the moving party has properly supported its motion, the adverse party must set forth specific facts and provide substantively admissible evidence at the time of the motion showing a genuine issue for trial. "When the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Bernardoni*, 499 Mich at 473.

This matter also involves a stipulated order. "Stipulated orders that are accepted by the trial court are generally construed under the same rules of construction as contracts." *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000). Like contracts, they are agreements between the parties. *Id*. This Court reviews de novo issues pertaining to the interpretation of contractual language. *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 715; 916 NW2d 218 (2018). Finally, an action to quiet title is an equitable action that we review de novo. *Beach v Twp of Lima*, 489 Mich 99, 106; 802 NW2d 1 (2011).

Defendant argues that the trial court erred in its determination that plaintiff was entitled to summary disposition because defendant's countercomplaint sought to forfeit and foreclose the land contract. We disagree.

A "land contract" commonly refers to a contract for the sale of an interest in real estate "in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999), quoting 1 Cameron, Michigan Real Property Law (2d ed.), § 16.1, p. 582. "A land contract is therefore an executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract." *Zurcher*, 238 Mich App at 291.

In Michigan, land contracts are governed by specific statutes. Relevant to the instant matter, MCL 565.361(1) provides that upon complete performance of a land contract vendee's contractual duties, i.e., complete payment of the purchase price and satisfaction of any other conditions, the land contract vendor is obligated to convey legal title to the vendee by an appropriate deed of conveyance. If, however, the vendee fails to perform all the terms of a land contract, a land contract vendor may seek to have the vendee's interest in the property terminated.

The land contract at issue unquestionably provides that defendant, as vendor, could declare that plaintiff breached the land contract and then bring a summary proceeding seeking forfeiture of the property. The contract specifically states at section 2.a that purchaser (plaintiff):

> acknowledges that the required periodic payments may not fully pay the principal balance by the final payment date. In that case, the final payment shall be a balloon payment consisting of all the then unpaid principal and accrued and unpaid interest. *Purchaser agrees that failure to make this balloon payment on the agreed upon date is a breach of this contract and Seller shall bring a forfeiture action as a result of this breach.

The land contract further provides, at section 3:

> f. Forfeiture.

> If Purchaser fails to perform any part of this contract, Seller may declare the contract forfeited. Seller may then keep all sums paid on this contract *seek to repossess the premises and keep all improvements on the premises. To redeem Purchaser's interest after a forfeiture judgment in summary proceedings, Purchaser must cure all defaults and pay all principal and interest, plus taxes, assessments, insurance and escrow payments required by this contract which have become due through the date of redemption. . . .

> g. Forfeiture and other remedies.

> *If Purchaser fails to comply with this contract for 30 days or more, and Seller wishes seek possession of the house because of the breach, Seller may seek intervention and the full remedies in the appropriate Court and jurisdiction, depending on the remedy sought. Seller may declare the entire unpaid balance due immediately upon the breach of paragraph 2.a. However, before making such a declaration or filing a lawsuit, Seller will give Purchaser 10 days' written notice of Seller's intent to accelerate the balance due, during which time said default may be cured.

It is not the land contract, however that necessarily dictates the resolution of this matter because during the course of this matter, the parties reached an agreement quieting title to the land and entered a stipulated order setting forth the agreement. Resolution of this matter thus turns primarily upon the interpretation of the parties' stipulated order entered on November 23, 2020. That order provides, in relevant part:

-4-

IT IS HEREBY ORDERED that title to the following property be and the same is hereby quieted in the name of Pauline Properties, LLC:

***

IT IS FURTHER ORDERED that Plaintiff/Counter-Defendant Rovin Vinod shall execute any and all documents necessary or appropriate to discharge, vacate, or withdraw any claimed interest in the Property.

IT IS FURTHER ORDERED that Defendant/Counter-Plaintiff Pauline Properties, LLC shall fully cooperate in allowing Vinod to have a professional appraisal of the Property conducted (at Vinod's expense).

IT IS FURTHER ORDERED that the remaining issues in this case relating to the parties' competing claims for monetary damages or compensation of any nature shall be heard by the Court via a Zoom hearing to be conducted on December 9, 2020, in the event that the parties cannot resolve the issues before that date.

Because our main goal in the interpretation of contracts is to honor the intent of the parties, we construe contracts so as to give effect to every word or phrase as far as practicable and interpret contractual terms in accordance with their ordinary meaning when the terms are not expressly defined in the contract. *VHS Huron Valley Sinai Hosp*, 322 Mich App at 715. Moreover, when contract language is clear and unambiguous, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent. *Id*.

There are four specific actions to be taken in the order at issue. First, the property at issue is quieted in the name of defendant. Second, plaintiff is to sign any documents to make sure his interest in the property is extinguished. Third, defendant is to cooperate in allowing plaintiff to have a property appraisal performed (at his own expense). Fourth, any and all of the parties' competing claims for damages were to be addressed, if the parties were unable to resolve them, by the trial court on December 9, 2020.

There is no dispute that the second and third actions, above, were performed. As to the first action, quieting title of the property to defendant, the parties appear to dispute whether the quieting of the title was to be considered a forfeiture or a foreclosure. Although neither term appears in the order, the trial court found that the action was one of forfeiture based upon the application of Michigan law on land contracts and upon a reading of the language set forth in the parties' land contract. While we do not believe that the stipulated order must necessarily be identified as either a forfeiture or a foreclosure, we agree that the law in Michigan does not allow a vendor to obtain both forms of relief upon an alleged breach of a land contract.

We first note that while defendant/vendor filed a counterclaim asking for relief in the form of both the entire unpaid balance of the land contract and for title to be quieted in defendant's favor, defendant stated at paragraph 3 of its counterclaim that it was seeking equitable relief "pursuant to MCL 600.2932." That statute, contained in the Revised Judicature Act of 1961, allows any person who claims any right or interest in land to bring an action in the circuit court against any other person who claims or might claim any interest inconsistent with the first person's rights or interest. MCL 600.2932(3) states that if the plaintiff in such matter "established his title

-5-

to the lands, the defendant shall be ordered to release to the plaintiff all claims thereto." There is nothing in the above that would permit all of the relief defendant is seeking: quiet title and return of the property to it *and* a monetary amount for the balance owed on the land contract that exceeded the value of the property.

As previously indicated, the land contract clearly and unequivocally provided defendant with the right to institute forfeiture proceedings in the event plaintiff breached the land contract. The stipulated order entered by the parties, on the other hand, is not specific as to whether the property was to be forfeited or foreclosed upon. Foreclosure differs from forfeiture in several key respects. In Michigan, forfeiture may only be used by the seller as a remedy for default if "the terms of the contract expressly provide for termination or forfeiture, or give the vendor the right to declare a forfeiture." MCL 600.5726. Foreclosure, however, has no such parallel requirement. Accordingly, the failure to specify foreclosure as a remedy in a land contract does not prevent a plaintiff from initiating a foreclosure action against a defendant.

More importantly, the procedures for forfeiture and foreclosure are different, as are the results. Foreclosure of land contracts is provided for in the Revised Judicature Act, at MCL 600.3101 *et seq*. One must specifically file a complaint to foreclose a land contract in the circuit court, MCL 600.3101, and the circuit court has the power to order a sale of the land contract premises, MCL 600.3115. The proceeds of a foreclosure sale are applied to discharge the debt owed on the property to plaintiff, and any surplus from the sale is given to the defendant (or other person entitled to it). MCL 600.3135. If the sale price of the property leaves any of the principal, interest, or costs for the land contract unpaid, the court can enter a judgment in favor of the vendor and against the vendee for the deficient amount. Thus, in a foreclosure, the land contract is essentially accelerated to make all payments on the contract immediately due and owing, the property at issue is to be sold, the vendor cannot keep the property or any surplus from the court-ordered sale, but the vendee remains liable for any deficiency that remains after the sale of the property.

One seeks forfeiture under the Summary Procedures Act. MCL 600.5726 specifically provides:

> A person entitled to any premises may recover possession thereof by a proceeding under this chapter after forfeiture of an executory contract for the purchase of the premises but only if the terms of the contract expressly provide for termination or forfeiture, or give the vendor the right to declare a forfeiture, in consequence of the nonpayment of any moneys required to be paid under the contract or any other material breach of the contract. For purposes of this chapter, moneys required to be paid under the contract shall not include any accelerated indebtedness by reason of breach of the contract.

Under MCL 600.5704, district courts, municipal courts and the common pleas court of Detroit have jurisdiction over summary proceedings to recover possession of premises pursuant to the provisions of MCL 600.5701 *et seq*. MCR 4.201 also authorizes district courts to conduct summary proceedings in cases involving the forfeiture of land contracts and sets forth the requirements for judgments entered pursuant to such summary proceedings. As to results obtainable in a forfeiture action, MCL 600.5750 states:

The remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory. A judgment for possession under this chapter does not merge or bar any other claim for relief, except that *a judgment for possession after forfeiture of an executory contract for the purchase of premises shall merge and bar any claim for money payments due or in arrears under the contract at the time of trial* and that a judgment for possession after forfeiture of such an executory contract which results in the issuance of a writ of restitution shall also bar any claim for money payments which would have become due under the contract subsequent to the time of issuance of the writ. The plaintiff obtaining a judgment for possession of any premises under this chapter is entitled to a civil action against the defendant for damages from the time of forcible entry or detainer, or trespass, or of the notice of forfeiture, notice to quit or demand for possession, as the case may be. [Emphasis added]

Our Supreme Court interpreted MCL 600.5750 in *Mich Nat'l Bank v Cote*, 451 Mich 180; 546 NW2d 247 (1996). In that case, the defendants purchased a parcel of property on land contract from the plaintiff. After the defendants allegedly breached the contract, the plaintiff brought an action against them. *Id*. at 181. The parties ultimately stipulated to the entry of a consent money judgement in the plaintiff's favor which also provided the defendants with 90 days to cure the material breaches of the land contract. The defendants did not pay the judgment and did not cure the material breaches. A writ of restitution was thus issued and the plaintiff obtained possession of the premises. *Id*. at 182. The plaintiff then filed a supplemental complaint against the defendants, seeking a money judgment for the unpaid property taxes. *Id*. Our Supreme Court found that, upon application of MCL 600.5750, such complaint was not appropriate.

The *Cote* Court noted that the land contract required the defendants to pay the real estate taxes on the property and that the taxes thus constituted "money payments due or in arrears under the contract at the time of trial." *Id*. at 183. It further found that according to the plain language of MCL 600.5750, the judgment of possession of the property and forfeiture in the plaintiff's favor barred a claim for recovery of the unpaid taxes. *Id*. at 183-185.

Thus, if the vendor prevails in a forfeiture action, the seller may keep the property if he chooses—unlike in a successful foreclosure action where the property must be sold. As also specified in MCL 600.5726, a forfeiture action is limited to possession of and quiet title to the land contract property. The last sentence of that statute makes clear that in forfeiture proceedings, the land contract is not accelerated and the vendor may not seek any accelerated indebtedness due to breach of the land contract. MCL 600.5750 also makes clear that "a judgment for possession after forfeiture of an executory contract for the purchase of premises shall merge and bar any claim for money payments due or in arrears under the contract at the time of trial . . . ."

In *Chicago Boulevard Land Co v Apartment Garages*, 245 Mich 448, 450; 222 NW 697 (1929), our Supreme Court held that if a vendor seeks forfeiture on a vendee's default on a land contract, the vendor cannot maintain any action at law for recovery of any part of the purchase price:

On vendee's default in a land contract containing the usual forfeiture clause, vendor may treat the contract as continuing in force and sue at law upon it for payments

-7-

due or bring action in equity for foreclosure of the vendor's lien and deficiency decree; or he may declare it forfeited. Ejectment or summary proceedings to regain possession are no part of forfeiture. The purpose and effect of a valid declaration of forfeiture are to end the contract and discharge vendor of the duty to convey and vendee of duty to pay. Consequently, after forfeiture, action at law will not lie for recovery of any part of the purchase price. By the same token, suit in equity for foreclosure and deficiency decree cannot be maintained. If the vendor exercises his option to declare the contract at an end, he cannot change his position and thereafter hold the purchaser liable to complete the purchase or pay any part of the unpaid purchase money. [internal citations and quotation marks omitted]

Similarly, in *Balesh v Alcott*, 257 Mich 352, 354; 241 NW 216 (1932), our Supreme Court noted that upon a vendee's breach of or default on a land contract, although the vendor has options available to it, it may only seek and obtain one of those options:

Plaintiff had an election of remedies at the time the default [of the land contract] occurred on the part of . . . the vendee. She could declare the contract forfeited and begin summary proceedings under the statute above mentioned [section 12, chapter 30 of Act No. 314, of the Public Acts of 1915, section 14975, Comp. Laws 1929], or she could file a bill for the foreclosure of the contract. The one would proceed upon the theory the contract was at an end [forfeiture]; the other, upon the theory the contract was in force [foreclosure]. She could not do both.

Our Supreme Court has more recently noted its preference for forfeiture in land contract matters:

There is no reason to burden the circuit courts with actions to foreclose land contracts. Land contract sellers should not be encouraged to commence such proceedings.

Since the seller's legitimate interests are generally protected by summary proceedings, he should not be constrained to commence foreclosure proceedings unless it appears that the purchaser does not wish to preserve and is willing to surrender his equity.

\*\*\*

If it appears that the purchaser does not desire or intend to perform and is willing to surrender his equity, then the seller must make a decision and, under the statute, is put to an election of remedies. He may accept possession or, if he wishes to obtain a deficiency judgment, abandon the summary proceedings in favor of foreclosure action. [*Gruskin v Fisher*, 405 Mich 51, 63, 64; 273 NW2d 893 (1979)]

That a vendor in a land contract action may not seek both foreclosure and forfeiture follows the doctrine of election of remedies. The common-law doctrine of election of remedies is a rule that precludes a party from pursuing two inconsistent remedies. *Riverview Coop, Inc v The First Nat'l Bank & Trust Co of Mich*, 417 Mich 307, 312; 337 NW2d 225 (1983). "Its purpose is not to prevent recourse to alternate remedies, but to prevent double redress for a single injury." *Id.* at

312. Our Supreme Court has reaffirmed that the Revised Judicature Act is, in effect, a codification of the common-law rule of election of remedies, with some arguable modifications. *Mich Nat'l Bank*, 451 Mich at 183 n 1. Clearly, under prevailing Michigan law, defendant could not seek both forfeiture and foreclosure.

Defendant avers that it was not seeking both forfeiture and foreclosure and that the stipulated order contains no identification of either forfeiture or foreclosure but that, instead, the parties agreed to a specific procedure for closing the case that must be followed. First and foremost, in defendant's amended counterclaim, filed on June 15, 2020, defendant specifically stated its confusingly titled "Quiet Title/Declaratory Judgment/Breach of Contract" claim that plaintiff did not pay the contract in full, that plaintiff was in breach of the land contract and that "Pursuant to the Contract at paragraph 3.f., Plaintiff/Counter-Defendant failed to perform any part of the Contract and the Contract is declared forfeited." Defendant requested that the trial court enter judgment determining that plaintiff breached the land contract and that plaintiff owed defendant the entire unpaid balance on the contract, *and* award defendant full legal and equitable title to the property in fee simple absolute, among other things. Thus, while defendant did not specifically state it was seeking foreclosure, it was seeking the entire unpaid balance on the contract as damages (which would be seen in a foreclosure action) in addition to the return of full title and possession of the property (as would be seen in a forfeiture action).

In any event, defendant claims that the language in the stipulated order provides an agreed-upon procedure that would avoid the foreclosure process, but at the same time would quiet title to the property in defendant's name and provide for foreclosure-like deficiency damages to be paid to it. According to defendant, the appraisal was to serve as the "sales price" and that defendant would be permitted to recover the amount of unpaid principal, taxes, insurance, and other charges that exceeded the appraisal amount. There is nothing in the language of the order, however, that suggests the appraisal was to serve as a sales price of any kind, or that defendant was permitted to recover damages based upon the appraisal. The order simply states that defendant was to cooperate with *plaintiff's* request to have the property appraised. If the parties had agreed that the purpose of plaintiff's requested appraisal was to set a "sales price" upon which defendant could then calculate any deficiency judgment, they could have specified the same. There is no ambiguity in the appraisal provision of the stipulated agreement and as such, this Court will read no language in the land contract that is not there. "When the language of the contract [or stipulated agreement] is clear and unambiguous, interpretation is limited to the actual words used . . . ." *Ajax Paving Indus, Inc v Vanopdenbosch Const Co*, 289 Mich App 639, 644; 797 NW2d 704 (2010).

The stipulated order does state that any and all of the parties' competing claims for damages were to be addressed, if the parties were unable to resolve them, by the trial court at a December 9, 2020 zoom hearing. However, it is undisputed that the hearing did not take place. Several events occurred after the December 9, 2020 hearing date, however, the most notable of which was that plaintiff refiled his motion for summary disposition on defendant's counterclaim on July 29, 2021, seeking dismissal of the counterclaim. Defendant responded that the November 23, 2020 stipulated order quieting title and setting a procedure for closing the case rendered plaintiff's summary disposition motion moot. Defendant argued that title to the property had been quitclaimed to defendant as required in the order, and an appraisal was already performed on the property, as also required by the order. Based on the appraisal that plaintiff obtained in the amount of $380,000, defendant calculated it is now owed damages in the amount of $52,122.16. Thus,

defendant contended there was no genuine issue of material fact and requested that the trial court enter judgment in defendant's favor in the amount of $52,122.16 ($432,122.16 minus $380,000), plus statutory interest, costs, and reasonable attorney fees.

Defendant's calculation of damages was based on the appraisal plaintiff had conducted on the property, which, as this Court previously addressed, the stipulated order did not specify was to be used for purposes of calculating damages. Moreover, defendant's claim is for what are essentially deficiency damages, which this Court also previously determined defendant could not legally pursue unless a foreclosure action was being pursued. As defendant had not filed a complaint for foreclosure or gone through statutory foreclosure proceedings, obtained no determination that there was a deficiency, and had already received title to and possession of the land contract property, the trial court's determination that defendant could not pursue any deficiencies from plaintiff was consistent with Michigan property law and the election of remedies doctrine.[2]

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood

---

[2] Although defendant specified a second issue concerning the trial court's denial of all requests for attorney fees, costs, and further monetary damages in its "Statement of Questions presented," defendant made no delineation between two argument in its appellate brief and simply states that such denial deprived defendant of an opportunity to present evidence of its claim for damages. Having presented no facts, arguments, or law in support of its claim for costs or attorney fees defendant has waived this issue on appeal. See *Reighard v ESPN, Inc*, __ Mich App __; __NW2d __ (2022) (Docket No. 355053), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). Moreover, defendant's request for relief in this Court was to direct the trial court to "deny the Purchaser's re-filed Motion for Summary Disposition and grant Seller a Judgment pursuant to its Request for a Judgment. In the alternative to granting that Judgment, that this Court direct the Trial Court to hold a hearing regarding Seller's Request for Judgment (i.e. seller's claim for damages)." Thus, it does not appear that defendant is actually challenging the trial court's denial of all requests for attorney fees and costs. It appears instead that it is only challenging the trial court's refusal to award it deficiency damages, which we previously addressed.