*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIM BRADLEY,

        Plaintiff-Appellant,

v

WESTFIELD INSURANCE COMPANY,

        Defendant,

and

AMERICAN SELECT INSURANCE COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
July 11, 2024
9:00 a.m.

No. 365828
Wayne Circuit Court
LC No. 21-010576-NF

Before: CAVANAGH, P.J., and JANSEN and MALDONADO, JJ.

MALDONADO, J.

Plaintiff, Kim Bradley, appeals by right the trial court's order granting summary disposition in favor of defendant, American Select Insurance Company, Disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).[1] We reverse.

## I. OVERVIEW

The facts of this case are largely undisputed. Clementine Bradley, plaintiff's mother, had an auto no-fault insurance policy through defendant. Unbeknownst to defendant, Clementine lived with plaintiff, and Clementine allowed plaintiff to drive her car. Plaintiff was in an accident while driving in Kentucky and sought to recover personal injury protection (PIP) benefits from defendant, but defendant sought rescission of the policy. According to defendant, Clementine

---

[1] Westfield Insurance Company was also a party to this action at its inception, but it was dismissed by stipulation of the parties in an order dated January 24, 2022; thus, it is not a party to this appeal.

-1-

defrauded it by failing to disclose that plaintiff lived with her. Defendant notified Clementine that it had unilaterally rescinded her policy, and defendant issued a refund for her premiums, which Clementine deposited. Ultimately, the circuit court decided that plaintiff was not entitled to receive PIP benefits from defendant, and this appeal ensued.

The parties raise three issues. First, whether Clementine committed fraud in her application for insurance. Second, whether Clementine agreed to a rescission by cashing the refund check. Third, if the rescission was proper, whether plaintiff can be considered an innocent third party and so still receive coverage. We conclude that fraud has not been shown and that the undisputed facts fail as a matter of law to establish a mutual rescission. In light of these conclusions, we need not address whether plaintiff is an innocent third party. Finally, the circumstances require us to address whether MCL 500.3113 bars recovery, and we conclude that it does not.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. UNDERLYING FACTS

The car accident from which this action arose was described as follows in the traffic collision report prepared by the police in Kentucky:

> Unit 1 was traveling south on Interstate 75 when she lost control of her vehicle between the 18 and 17 mile marker. Unit 1 left the roadway on the left side missing the start of the cable barrier. Unit 1 entered the median where it overturned. At the time of collision it was raining and roadways was [sic] slippery which contributed to the collision. Both Unit 1 operator and passenger was [sic] transported to the Baptist Health Hospital by Whitely County EMS for further medical treatment. . . .

During her deposition, plaintiff described what she could remember from the moment of the accident:

> So we drove a while, maybe like six hours but we drove for a while. And it started to rain. And as I'm driving, it's a semi truck on my left and the semi truck hops over in front of me. So I get—proceed to go to the left to get in the left lane.
>
> And when I get in the left lane, the car just like pfft, [sic] like I just remember the car just spinning, and it spinned and spinned.

Plaintiff admitted that she did not have a valid driver's license. Plaintiff lived with her mother in Detroit and had her entire life. However, plaintiff also testified that her mother did not know until the accident that plaintiff did not have a valid license. In her testimony, Clementine agreed that she was not aware that plaintiff's license was suspended until after the accident.

On November 2, 2020, defendant sent a letter to Clementine Bradley informing her that it had rescinded her insurance policy. This letter provided, in relevant part:

After reviewing the circumstances surrounding the motor vehicle accident of September 25, 2020, American Select Insurance Company is rescinding the policies issued to you . . . . As a result of this rescission action, all coverage is void. It is as if the policies were never issued. Under separate cover, we will be sending you a check, which will represent a refund of all premiums that were paid for the policies.

The basis for rescinding the policies includes:

-Your daughter, Kim Lorraine Bradley (date of birth November 23, 1990), was operating your vehicle during the September 25, 2020 accident.

-Kim Lorraine Bradley resides with you at your policy address and has resided there since prior to the inception of the American Select Insurance Company policy; that originally incepted on September 30, 2017.

-Kim Lorraine Bradley had a suspended license at the policy inception of September 30, 2017. As such, she was not an eligible person.

-Kim Lorraine Bradley has not been listed as a driver on the American Select Insurance Company policies. American Select Insurance Company was not notified by you that she is a resident of your address, nor that her license had been suspended.

-Kim Lorraine Bradley's driving history includes multiple driving violations resulting in license suspension. Her current driving license is not valid: EXPIRED, and current driving status is: INELIGIBLE, according to the State of Michigan.

If you would have notified American Select Insurance Company at policy inception, as required by the policy, that Kim Lorraine Bradley was a resident of your address and had a suspended license, American Select Insurance Company would not have issued the policies to you since she was not an eligible driver.

The letter also included excerpts from the policy providing that the insured must ensure that the information provided to defendant "is correct and complete," that the insured must notify defendant if there are any changes, and in particular, that it must be notified if "[a]ny operators are added to or leave your household." Neither the letter nor the check contained any language indicating that cashing the check would constitute an acceptance of the rescission and that doing so would bar her from seeking judicial relief. Clementine cashed the check and did not attempt to return the money.

## B. PROCEDURAL HISTORY

This litigation began on August 20, 2021, when plaintiff filed a complaint against defendant and Westfield Insurance Company. Plaintiff alleged that she "sustained accidental bodily injuries" when she was in a car accident in Kentucky on September 25, 2020, while driving a car insured by defendant and by Westfield. Plaintiff submitted claims for no-fault benefits, along

with the necessary documentation, but defendant "refused to compensate" her. Plaintiff requested declaratory relief determining the applicability of the no-fault act and the amount of benefits to which she was entitled.

Defendant filed affirmative defenses on September 23, 2021, alleging that it was entitled to summary disposition pursuant to MCR 2.117(C)(7) (release), (8) (failure to state a claim), and (10) (no genuine issue of material fact). Defendant further averred that the claims were barred by MCL 500.3106 (exclusions from definition of accidental bodily injury). Defendant alleged that it was entitled to rescission of the insurance policy based on fraud because Clementine Bradley, the insured, did not disclose that plaintiff, who had a suspended license, was living with her and using the vehicle. Defendant put forth a litany of other affirmative defenses that are not pertinent to this appeal. On June 22, 2022, defendant filed a motion seeking summary disposition pursuant to MCR 2.116(C)(10). After restating its allegations of fraud, defendant alleged that it sent a rescission letter to Clementine on November 2, 2020 and that Clementine "cashed the premium refund checks, thus mutually ratifying the rescission *ab initio*."

On August 23, 2022, plaintiff filed an answer to defendant's motion for summary disposition. Plaintiff asserted that there was no fraud because defendant presented no evidence that Clementine was required to identify the household residence when she applied for the policy and that she remained eligible for benefits as an innocent third party, even if the rescission was valid. Finally, balancing the equities establishes that plaintiff was an innocent third party.

On September 27, 2022, a hearing was conducted to consider defendant's motion for summary disposition. The court asked if everyone "agree[d] that there was fraud in the procurement" and that the innocent third-party issue was the sole dispute, and counsel for plaintiff stated that he did not agree that there was fraud. The parties then made arguments that were consistent with their motions and briefs, and the court decided to grant defendant's motion. The court was persuaded by the exhibits presented that Clementine was expected to disclose that plaintiff lived with her and failed to do so. The court then went through the equitable factors to consider for innocent third-party cases and concluded that plaintiff was not entitled to equitable relief. Accordingly, the court granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). The court entered an order memorializing this decision on September 28, 2022.

On October 19, 2022, plaintiff filed a motion for reconsideration, arguing that "nowhere in the application for insurance, or any other documentation submitted by defendant, are there any questions whatsoever that, 'asked about drivers in the household.' " "In the absence of any evidence that defendant's insured was ever asked about drivers in the household, there exists a palpable error by which the court and the parties have been misled." On April 3, 2023, the court entered an order denying this motion because "Plaintiff is merely attempting to argue identical issues that were previously ruled on by this Court."

This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v*

*Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition should be granted pursuant to MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

Issues involving "the proper interpretation and application of statutes and court rules" are reviewed de novo. *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018). This Court's "primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019). "The words used by the Legislature in writing a statute provide us with the most reliable evidence of the Legislature's intent." *Drew v Cass County*, 299 Mich App 495, 499; 830 NW2d 832 (2013). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 418-419; 925 NW2d 897 (2018) (quotation marks and citation omitted). When ascertaining a statute's plain meaning, "[e]ffect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory." *Id.* at 419 (quotation marks and citation omitted). Moreover, this Court examines "the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017). "Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent." *Vermilya*, 325 Mich App at 419 (quotation marks and citation omitted).

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

### III. RESCISSION

Plaintiff argues that the trial court erred by concluding that defendant was entitled to rescission because Clementine Bradley procured the policy via fraudulent inducement. We agree. Further, we reject defendant's argument that it is entitled to affirmance on the alternative grounds that plaintiff agreed to rescission of the policy by accepting the refund.

### A. FRAUD

"[I]t is well settled that an insurer is entitled to rescind a policy *ab initio* on the basis of a material misrepresentation made in an application for no-fault insurance." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 445; 889 NW2d 759 (2016). "[I]n order to justify rescission of PIP coverage with respect to preprocurement misrepresentations, the insurer must be able to demonstrate common-law fraud under equitable principles." *Howard v LM Gen Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 357110); slip op at 4. Accordingly, the party asserting fraud must establish:

> (1) the alleged fraudulent party made a material representation; (2) the representation was false; (3) the person making the representation knew it was false or acted recklessly in making the statement; (4) the person intended that the

-5-

opposing party should act upon the representation; (5) the opposing party acted in reliance; and so (6) suffered injury. [*Id*.]

In this case, defendant has failed to produce any evidence suggesting that Clementine made a false representation. Defendant's application for insurance did not ask the applicant who lived with her and whether there were other drivers in the household. Nevertheless, defendant emphasizes the following line in an unsigned copy of Clementine's insurance application: "In making this application for insurance, it is understood that as a part of our underwriting procedure, an investigative consumer report containing driving record information may be obtained for each driver in the household." Simply put, this statement does not say what defendant wants it to say; it does not direct or ask the applicant to list the drivers in the household or even who lived in the household. A failure to provide information that is not requested does not constitute a misrepresentation, let alone fraud.

Defendant also relies on two provisions of the insurance policy. The first provides:

The premium for your property and each of ***your covered autos*** is based on information we received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete, and you agree to notify us if any of this information changes during the policy period.

The second one provides: "To properly insure ***your covered auto***, you must promptly notify us when . . . [a]ny operators are added to or leave your household." These provisions are not helpful to defendant because plaintiff lived with Clementine from the policy's inception, and these provisions require notice of any changes.

Because there is no evidence of a misrepresentation, defendant is not entitled to rescind the contract on the basis of fraud.

## B. MUTUAL RESCISSION

As an alternative basis for affirmance, defendant argues that Clementine Bradley agreed to mutually rescind the policy by accepting the refund. We disagree

There are two types of rescission: mutual and unilateral. Defendant argues that a mutual rescission was implied by Clementine's acceptance of the check refunding her premiums. However, acceptance of consideration is not an effective mutual rescission unless the receiving party "is fully informed of the condition accompanying acceptance. . . . [T]here can be no severance of the condition from acceptance." *Puffer v State Mut Rodded Fire Ins Co*, 259 Mich 698, 702; 244 NW 206 (1932) (quotation marks and citation omitted). In *Puffer*, the Supreme Court held that acceptance of the funds effected an enforceable mutual rescission because on the back of the check sent to the insured, next to the signature block, it stated: "[W]e hereby jointly and severally release the State Mutual Rodded Fire Insurance Co. of Mich. from any and all claim therefor." *Id.* at 700 (quotation marks omitted). Because of that unambiguous statement of the condition attached to the check, the Supreme Court concluded that the insured was fully informed of the consequences of accepting it. *Id.* at 702.

This principle was more fully explored in a recent case involving PIP benefits. See *Cheema v Progressive Marathon Ins Co (On Reconsideration)*, unpublished per curiam opinion of the Court of Appeals, issued September 29, 2022 (Docket No. 355910).[2] Unpublished opinions are not binding, but we find *Cheema* persuasive and adopt its reasoning. In *Cheema*, this Court cited *Puffer* and held that the plaintiff's acceptance of the refunded premiums did not constitute an acceptance of the rescission because "Progressive did not send Overland a check with unambiguous conditions on the acceptance of the funds." The Court went on to say, "Progressive did not put Cheema on notice that, by accepting and retaining the refunded premiums, Cheema would be agreeing to the rescission of the policy on behalf of Overland. Consequently, the evidence did not show that Cheema necessarily agreed to particular terms and conditions by the use of the refunded premiums, as occurred in *Puffer*."

The reasoning in *Cheema* is in line with other pertinent caselaw. In *DMI Design and Mfg, Inc v Adac Plastics, Inc*, 165 Mich App 205, 208; 418 NW2d 386 (1987),[3] the check in question had the following "release and settlement language" typed on the back:

> The endorsement of this check acknowledges full and final settlement of any and all claims of DMI Design and Manufacturing, Inc. against Adac Plastics, Inc. arising out of the Purchase Order issued by DMI Design and Manufacturing, Inc. to Adac Plastics, Inc. for the production of 2,000 window frame s [sic] and interior frame sticks for a ventilating door lite [sic]. The tender of the payment of the amount of this check is not an admission of liability on the part of Adac Plastics, Inc. but is to compromise a disputed claim. [Quotation marks omitted; alterations in original.]

This Court then went to great lengths to emphasize that its conclusion was premised on the evidence that the plaintiff understood that cashing the check meant entering an agreement:

> We are convinced that when plaintiff endorsed the check it knew the defendant's intention from reading the release and settlement language as well as from its own efforts to limit the release by adding the statement that endorsement did not constitute acceptance of the terms. In this case, plaintiff's action in negotiating the check speaks louder than plaintiff's words. The fact that plaintiff sent back the previous checks indicates that it knew precisely what it was doing in accepting this check.

---

[2] Being unpublished, we are not bound to follow this opinion, MCR 7.215(C)(1), but it may be considered for their persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

[3] While decisions issued before November 1990 should be "considered to be precedent and entitled to significantly greater deference than are unpublished cases," this Court is not "strictly required to follow" such decisions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

Defendant's notation on the check was unambiguous and all-encompassing as to "any and all claims" concerning the window frames. Plaintiff cannot plausibly argue that it did not realize the ramifications of this language. [*Id*. at 210.]

Similarly, in *Fuller v Integrated Metal Technology, Inc*, 154 Mich App 601, 614; 397 NW2d 846 (1986), this Court again emphasized the fact that the plaintiff understood the ramifications of accepting the check. The plaintiff was in a dispute with his former employer regarding the amount owed to him pursuant to a termination agreement. *Id*. at 610.

Plaintiff thereafter accepted money which was tendered by defendant with an accompanying condition. The condition was clear and unequivocal and indicated that, upon acceptance of the various checks, plaintiff's claim against defendant would be paid in full. Not only was the condition clearly expressed in a manner in which plaintiff was sure to be able to understand, plaintiff's deposition testimony indicates that he actually did understand the condition. Plaintiff's acceptance of the payments under these circumstances constitutes an accord and satisfaction. [*Id*.]

This Court concluded that because it was "clear that defendant tendered a check with explicit and clear conditions accompanying such tender" and "undisputed that plaintiff understood the meaning of the condition which accompanied the tender," accepting the check constituted an accord and satisfaction. *Id*. at 614.[4]

Contrary to the published caselaw, defendant urges this Court to infer a mutual rescission from plaintiff's cashing of defendant's refund check. However, as explained in *Puffer*, *DIA*, and *Fuller*, a mutual rescission requires mutual intent. See also *Tuomista v Moilanen*, 310 Mich 381, 384; 17 NW2d 222 (1945); *Young v Rice*, 234 Mich 697, 701; 209 NW 43 (1926). As stated above, the Supreme Court held in *Puffer* that accepting consideration *only* binds the accepting party to an agreement if it has been made clear to the accepting party that, by doing so, an agreement is formed. See *Puffer*, 259 Mich at 702; see also *Obremski v Dworzanin*, 322 Mich 285, 289-290; 33 NW2d 796 (1948) (explaining that "[a]s a matter of law it is requisite to a valid cancellation or accord and satisfaction of an outstanding undertaking that . . . there should be a meeting of minds").

In this case, the letter that the refund check accompanied unambiguously conveyed to Clementine Bradley that defendant had unilaterally decided to rescind the policy and that there was nothing she could do about. Indeed, the rescission letter specifically said that "American Select Insurance Company is rescinding the policies issued to you;" it did not say that defendant wanted to rescind the policy and that Clementine could agree to the rescission by cashing the

---

[4] In response to these published opinions, defendant cites a 2018 unpublished opinion. In *Enriquez v Rios-Carranza*, unpublished per curiam opinion of the Court of Appeals, issued March 20, 2018 (Docket No. 336128), p 2, the panel was presented with a rescission issue similar to that before us now and concluded that the rescission was effective because the refund check was cashed. However, the cases cited for this principal were *Puffer*, *DMI*, and *Fuller*—the three cases just discussed which prevented the insurer from relying solely on the cashing of the check absent language making it clear that doing so would constitute an agreement to rescind the policy. Accordingly, we reject the approach taken in *Enriquez*.

check. The letter also asserted that defendant's "right to rescind the policy exists under common law" and provided a citation to a Michigan Supreme Court case. The emphasis on its own right to rescind further illustrates that it was informing Clementine of something that had been done, rather than inviting her to assent to something yet to happen. Finally, the letter quoted portions of the policy that provided defendant the right to void the policy if the insured concealed or misrepresented material facts. The last of these provisions said, "If *we* void this policy, it shall be void from its inception as if this policy never took place." The quotation of these provisions was clearly an explanation from defendant of its perceived right to unilaterally void the policy. Moreover, nothing in the record suggests that anything written on the check stated any condition of acceptance, let alone mutual rescission of the policy.

The letter informed Clementine that there had been a unilateral rescission; it did not invite her to agree to a mutual rescission. However, the policy, which is subject to laws governing contracts, *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018), only allowed unilateral rescission due to fraud or misrepresentation. Because there was no fraud, there was no unilateral right of rescission. We further conclude that no mutual rescission occurred.

Thus, our conclusion that cashing the check, under these circumstances, was not sufficient to mutually rescind the policy is further bolstered by examining results that could ensue if we were to hold otherwise; an insurer could respond to any sizeable claim by telling the insured that the policy is rescinded, including a check, and hoping the insured cashes it. If the insured takes the bait and cashes the check, then the insurer is free from its contractual obligations. This hypothetical demonstrates the reason that mutual rescissions must be based on proof that the insurer informed the insured that cashing the check would constitute a mutual rescission by which the insured would forfeit any right to dispute the lawfulness of the rescission.[5]

For these reasons, we conclude that defendant's argument that Clementine Bradley agreed to a mutual rescission by accepting the refund check is without merit.[6]

## IV. MCL 500.3113

In light of conflicting caselaw on the topic, the facts of this case require us to address whether MCL 500.3113 bars recovery on the basis of the fact that plaintiff was driving with a suspended license. Pursuant to the first-out rule, MCR 7.215(J)(1), we are bound by the older

---

[5] Defendant does not suggest that including the necessary language in the letter or check would constitute a burden, let alone an improper one.

[6] As noted, in light of our conclusions that there was no fraud in the procurement and that the undisputed facts do not constitute a rescission, we need not address whether or not the plaintiff is an "innocent third party" because "this Court does not decide moot issues." *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019) (quotation marks and citation omitted).

caselaw to hold that plaintiff did not unlawfully take Clementine Bradley's car and is therefore entitled to recovery.

## A. BACKGROUND ON MCL 500.3113

The issue before revolves around section 3113 of The Insurance Code of 1956, MCL 500.1 *et seq.*, which provides in relevant part:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> (a) The person was willingly operating or willingly using a motor vehicle or motorcycle that was taken unlawfully, and the person knew or should have known that the motor vehicle or motorcycle was taken unlawfully. [MCL 500.3113.]

Thus, a person driving a car that was taken unlawfully is not entitled to PIP benefits.

This Court addressed the meaning of "taken unlawfully" when it decided *Monaco v Home-Owners Ins Co*, 317 Mich App 738; 896 NW2d 32 (2016). In that case, the plaintiff sought PIP benefits on behalf of her 15-year-old daughter, Alison. *Id*. at 741. Alison "sustained severe injuries when she lost control of a vehicle that she was driving and crashed into a roadside ditch." *Id*. At the time of the crash, Alison had obtained a driver's permit but was only legally authorized to drive "if accompanied by a licensed parent, guardian, or 21–year–old, and she was not so accompanied when the accident occurred." *Id*. at 741-742. There was deposition testimony from "plaintiff, her partner, and Alison" indicating "that Alison had permission to take and drive the car on her own at the time of the accident." *Id*. at 743.

At issue was whether Alison taking the vehicle with permission but without a valid license constituted an unlawful taking as the term is used in Section 3113 of The Insurance Code. *Id*. at 746. This Court noted that "[t]he first level of inquiry when applying MCL 500.3113(a) always concerns whether the taking of a vehicle was unlawful, and if the taking was lawful, the inquiry ends because the statute is inapplicable." *Id*. at 747. The Court drew a "distinction between unlawfully taking a motor vehicle and unlawfully using a vehicle," reasoning that "obtaining possession of an object is very different from employing that object or putting it into service." *Id*. at 749 (quotation marks and citation omitted).

> Although it may have been unlawful for plaintiff, as owner of the car, to authorize or permit Alison to drive the vehicle in violation of the law, it had no bearing on, nor did it negate, the authorization and permission given by plaintiff for Alison to take the vehicle. Alison did not gain possession of the vehicle contrary to Michigan law; rather, she unlawfully used the vehicle, i.e., Alison put it into service in violation of Michigan law. . . . While plaintiff's actions might have subjected her to prosecution under MCL 257.326, they did not turn an authorized or permitted taking into an unlawful taking. [*Id*. at 750 (quotation marks, citations, and alterations omitted).]

-10-

Therefore, this Court deemed the defendant's arguments "unavailing because they ultimately conflate the unlawful use or operation of a motor vehicle with the unlawful taking of a vehicle." *Id*.[7]

In *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 5; 972 NW2d 860 (2021), the plaintiff was in a car accident while driving a rental car, that was rented by his wife, without a valid driver's license. The defendant argued that the plaintiff was not entitled to PIP benefits because the absence of a driver's license rendered the plaintiff's taking of the vehicle unlawful. *Id*. at 15-16. The Court provided a detailed overview of *Monaco* before describing the analysis in that case as "short and straightforward—the taking was with the owner's permission, and therefore Alison did not have the *mens rea* of taking the car contrary to the owner's authorization. Once it was resolved that the taking was lawful, the inquiry ends because the statute is inapplicable." *Id*. at 19 (quotation marks and citation omitted). The Court determined that the case before it was distinguishable from *Monaco* because, while the plaintiff had his wife's permission to operate the vehicle, his wife did not own the car—the rental company did. *Id*. at 21. "Unlike in *Monaco*, in which Alison's mother had told Alison that she could take the car, plaintiff's taking of the car in this case was directly contrary to [the rental company's] express written terms." *Id*. Therefore, while this Court in *Ahmed* concluded that the plaintiff took the vehicle unlawfully, it reaffirmed the holding in *Monaco* that the unlawful operation of a vehicle with the permission of the vehicle's owner is a lawful taking.

## B. *SWOOPE* IS NOT BINDING

*Swoope* purported to overturn eight years of binding precedent by overlooking *Monaco* and misapplying *Ahmed*. Moreover, *Swoope* ignored the plain language of the statute by replacing the phrase "taken unlawfully" with the phrase "operated unlawfully."[8]

In *Swoope*, the plaintiff was in an accident while driving a car owned by a friend, and while there is no indication that she did not have the friend's permission to take the car, "she did not have a valid driver's license." *Swoope*, ___ Mich App at ___; slip op at 1. As this Court explained in *Monaco*, the fact that the plaintiff had permission from the vehicle's owner to use the vehicle should have ended the analysis—there was no unlawful taking. See *Monaco*, 317 Mich App at 747. In *Swoope*, the panel eliminated the distinction between taking and operating; the entire analysis was under a heading titled "UNLAWFUL OPERATION." *Swoope*, ___ Mich App at ___; slip op at 2. However, the statute clearly directs courts to focus on operation or use following an unlawful taking. See MCL 500.3113(a).

---

[7] While not binding, in a 2023 unpublished opinion, a panel of this Court relied on *Monaco* to conclude that the plaintiff, who was driving drunk and with a suspended license, had not effected an unlawful taking as the term is used in MCL 500.3113(a). *Amos v Progressive Marathon Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued July 13, 2023 (Docket Nos. 360091 and 360098), pp 7-8.

[8] Because it was released while this case was pending, neither party addressed *Swoope* in their briefs. Nevertheless, we will not overlook controlling caselaw.

The Court relied entirely on *Ahmed*'s articulation of "a three-prong test" for analyzing MCL 500.3113, under which the statute "applies to any person (1) willingly operating or willingly using a motor vehicle or motorcycle that (2) was unlawfully taken by someone, and (3) the person seeking benefits knew or should have known that the motor vehicle was taken unlawfully." *Id*. at 3 (quotation marks and citation omitted). The Court then quoted the statement in *Ahmed* that "[a]ny violation of the criminal law *that leads to a taking of a motor vehicle* will constitute an 'unlawful taking' for purposes of MCL 500.3113(a)." *Id*. (quotation marks and citation omitted; emphasis added). While this was an accurate statement of the law, the panel overlooked the need to show that the violation of criminal law "leads" to a taking. *Id*. The panel continued:

> Defendant's motion for summary disposition focused on the second and third prong of the *Ahmed* test. It moved for summary disposition, in part, because plaintiff admitted she did not have a valid driver's license at the time of the accident. In support of this assertion, defendant attached plaintiff's deposition testimony in which she admitted she did not have a valid license. [*Id*. at 3-4.]

The Court concluded, because "operating a vehicle without a valid license is unlawful for purposes of MCL 500.3113(a)," the plaintiff was not entitled to PIP benefits. *Id*. at 4.

The facts of *Swoope* cannot be meaningfully distinguished from the facts of *Monaco*. In each case, a vehicle was operated with the owner's permission but without a valid license. Because *Monaco* was decided and published first, this Court was required to follow it when deciding *Swoope*. See MCR 7.215(J)(1). If the panel did not agree with *Monaco*, then the proper procedure was to declare a conflict; instead, the panel simply made no mention of it.

The present case cannot be meaningfully distinguished from *Swoope* and *Monaco*. Just like those cases, plaintiff took a vehicle with the owner's permission then operated it without a valid license. In *Monaco*, this Court determined that such facts do not constitute an unlawful taking, but in *Swoope* this Court determined that such facts do constitute an unlawful taking. "When a panel is confronted with two conflicting opinions published after November 1, 1990, the panel is obligated to follow the first opinion issued." *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 473; 556 NW2d 517 (1996). Because *Monaco* was decided first, *Monaco* is the case we must follow.

Therefore, we conclude that *Monaco* controls the issue and *Swoope* is not binding. Therefore, plaintiff lawfully took the vehicle and is not barred from recovery by MCL 500.3113.

## V. CONCLUSION

We conclude as a matter of law that Clementine Bradley did not procure her insurance policy via fraudulent inducement because she was never asked by defendant to identify the members of her household and never represented to defendant that plaintiff did not reside with her and use her car. We also conclude that the rescission relied upon by defendant was not mutual and that the claimed basis for a unilateral rescission, i.e. fraud, cannot be shown. Further, because there was no rescission, the innocent third-party doctrine is inapplicable. Finally, the fact that plaintiff operated the vehicle without a valid license does not constitute an unlawful taking pursuant to MCL 500.3113.

Reversed. This case is remanded for additional proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Allie Greenleaf Maldonado
/s/ Mark J. Cavanagh